******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# S. C. *v.* J. C.*
## (AC 46049)

Moll, Clark and Westbrook, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dis-
solved, appealed to this court from the trial court's judgment granting
certain postdissolution motions filed by the defendant. *Held*:

1. The record was inadequate to review the plaintiff's claim that the trial
court erred in granting the defendant's motion to continue an emergency
order of temporary custody regarding the parties' minor children, E and
A; the trial court's order failed to include the factual or legal bases for
its decision as required by the rule of practice (§ 64-1 (a)) and the
plaintiff failed to file a notice pursuant to Practice Book § 64-1 (b) with
the Office of the Appellate Clerk indicating that the trial court had failed
to comply with § 64-1.

2. The plaintiff's claim challenging the dispositional portion of the order
granting temporary custody of E and A to the defendant was moot
because the defendant no longer had custody over the children; while
the plaintiff's appeal was pending, E had reached the age of majority
and the trial court had granted a motion filed by A's attorney seeking
an order awarding the plaintiff sole legal custody and primary physical
custody of A; accordingly, this court dismissed that portion of the appeal
for lack of subject matter jurisdiction.

3. The trial court abused its discretion in granting the defendant's motion
for contempt in connection with the plaintiff's failure to comply with
a court order requiring the plaintiff to transfer physical custody of A to
the defendant: there was insufficient evidence to support the trial court's
finding that the plaintiff had wilfully violated the court order, as neither
party presented any evidence that the plaintiff refused to transfer cus-
tody of A to the defendant, that she encouraged A not to go to the
defendant, or that she wilfully prevented A from going to the defendant,
and there was evidence that the plaintiff had attempted to facilitate the
transfer of physical custody of A to the defendant and that A had resisted
her efforts.

Argued January 17—officially released August 13, 2024

---

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as
amended by the Violence Against Women Act Reauthorization Act of 2022,
Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person
protected or sought to be protected under a protection order, protective
order, or a restraining order that was issued or applied for, or others through
whom that person's identity may be ascertained.

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Stewart, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Truglia, J.*, granted the defendant's application for an emergency ex parte order of custody; subsequently, the court, *Truglia, J.*, continued its emergency order granting the defendant temporary custody of the parties' children; thereafter, the court, *Truglia, J.*, granted the defendant's motion for contempt, and the plaintiff appealed to this court. *Appeal dismissed in part*; *reversed in part*; *judgment directed.*

*Dante R. Gallucci*, for the appellant (plaintiff).

*Opinion*

CLARK, J. In this custody dispute, the plaintiff mother, S. C., appeals from the judgment of the trial court granting certain postdissolution motions of the defendant father, J. C.[1] On appeal, the plaintiff claims that the court erred in (1) continuing a previously issued emergency order of temporary custody that gave the defendant sole legal custody of the parties' two children and primary physical custody of the parties' youngest child, A, pursuant to General Statutes § 46b-56f because (a) the defendant did not prove by a preponderance of the evidence that there was an immediate and present risk of physical danger or psychological harm to the children sufficient to support his application and, therefore, the granting of his application was based on a

---

[1] Because the defendant did not file an appellee's brief on or before October 27, 2023, this court ordered "that the appeal shall be considered on the basis of the [plaintiff's] brief and, if applicable, the appendix, the record, as defined by Practice Book § 60-4, and oral argument, if not waived by the [plaintiff] or the court. Pursuant to Practice Book § 70-4, oral argument by the [defendant] will not be permitted."

clearly erroneous factual finding, and (b) the court's award of temporary custody to the defendant, who had been "found . . . to be a domestic abuser" was an abuse of discretion, not in the best interests of the children, and against federal and state public policy; and (2) granting the defendant's motion for contempt for failure to comply with a court order requiring the plaintiff to transfer physical custody of A to the defendant. We conclude that the record is inadequate to review the plaintiff's claim that the defendant failed to prove by a preponderance of the evidence that there was an immediate and present risk of physical danger or psychological harm to the children and, therefore, affirm the judgment as to that portion of the plaintiff's first claim. We dismiss the appeal as to the plaintiff's claim challenging the dispositional portion of the temporary custody order granting temporary custody to the defendant because we conclude that it is moot in light of events that have occurred since this appeal was filed. We agree, however, with the plaintiff on her claim challenging the court's order finding her in contempt and, accordingly, reverse the judgment of contempt.

We begin by setting forth the relevant facts, as found by the trial court, and procedural history of this case. The parties married on July 19, 2002, and have two children, E and A. On March 9, 2022, the court, *Stewart, J.*, dissolved the parties' marriage on the ground that the marriage had broken down irretrievably. The parties were granted joint legal custody of their two minor children, with primary physical custody granted to the plaintiff.

The court granted the defendant in-person visitation with the minor children to be increased gradually over time. Due to a history of domestic violence and conflict throughout the marriage, the court also ordered that the children engage in individual therapy with a provider agreed upon by both parties and that the defendant and

both children engage in family therapy with a specific provider. The court further provided that neither the individual therapy nor the family therapy would cease until the children's individual psychologists released them from treatment.

On June 14, 2022, the defendant filed an application for an emergency ex parte order of custody (application) pursuant to § 46b-56f.[2] In support of his application, the defendant filed an affidavit averring that there

[2] General Statutes § 46b-56f provides: "(a) Any person seeking custody of a minor child pursuant to section 46b-56 or pursuant to an action brought under section 46b-40 may make an application to the Superior Court for an emergency ex parte order of custody when such person believes an immediate and present risk of physical danger or psychological harm to the child exists.

"(b) The application shall be accompanied by an affidavit made under oath which includes a statement (1) of the conditions requiring an emergency ex parte order, (2) that an emergency ex parte order is in the best interests of the child, and (3) of the actions taken by the applicant or any other person to inform the respondent of the request or, if no such actions to inform the respondent were taken, the reasons why the court should consider such application on an ex parte basis absent such actions.

"(c) The court shall order a hearing on any application made pursuant to this section. If, prior to or after such hearing, the court finds that an immediate and present risk of physical danger or psychological harm to the child exists, the court may, in its discretion, issue an emergency order for the protection of the child and may inform the Department of Children and Families of relevant information in the affidavit for investigation purposes. The emergency order may provide temporary child custody or visitation rights and may enjoin the respondent from: (1) Removing the child from the state; (2) interfering with the applicant's custody of the child; (3) interfering with the child's educational program; or (4) taking any other specific action if the court determines that prohibiting such action is in the best interests of the child. If relief on the application is ordered ex parte, the court shall schedule a hearing not later than fourteen days after the date of such ex parte order. If a postponement of a hearing on the application is requested by either party and granted, no ex parte order shall be granted or continued except upon agreement of the parties or by order of the court for good cause shown.

"(d) The applicant shall cause notice of the hearing and a copy of the application, the applicant's affidavit, and the ex parte order, if issued, to be served on the respondent not less than five days before the hearing on the application."

was an immediate and present risk of physical danger and psychological harm to the parties' two children due to the plaintiff's inability to "facilitate the court's orders regarding parenting and therapy" and to "control" the minor children. Specifically, the defendant averred that "[t]he minor children are declining emotionally and educationally because of the conflict and lack of access to me. The plaintiff admittedly is unable to control our minor children, in particular [A], and this poses a direct risk to the emotional and physical safety and well-being of the children. If the plaintiff's conduct continues, it is very likely that our children will continue to decline and I will not see my children ever again." The court, *Truglia, J.*, declined to award ex parte relief but ordered that an evidentiary hearing be held on the application.

On September 22, 2022, after a three day evidentiary hearing that took place on July 19, August 16 and September 22, 2022, the court granted the defendant's application. At that time, E was seventeen years old and A was fourteen years old. In its order granting the defendant's application, the court stated in relevant part: "The court finds that neither of the parties' children have had any contact whatsoever with the defendant since this court entered judgment on March 9, 2022. The court finds that there is a danger of imminent psychological harm to the parties' children due to the complete lack of contact between the children and the defendant. The court further finds that the plaintiff is unable to implement the court's orders of March 9, 2022, regarding the children's psychotherapy and visitation, especially with respect to [A].

"The court therefore finds good cause to grant the application. The court grants the defendant's request that he have temporary sole legal and physical custody of [A]. Commencing Saturday, October 1, 2022, and thereafter until further order of the court, the defendant

will have primary physical custody of [A] and will provide him with his primary residence.

"The plaintiff will have reasonable and flexible parenting time with [A], including telephone access, which will be at the defendant's reasonable discretion until further order of the court.

"The court also grants the defendant sole legal custody of [E], but does not believe that changing the order of physical custody of [E] at this time would be in her best interest.

"The court vacates all orders regarding therapy set forth in the March 9, 2022 judgment. Henceforth, until further order of the court, the defendant will determine the choice of psychotherapist for each child, and the course of therapy for each child." The court continued the matter to November 9, 2022, to "receive additional evidence and make such further and additional orders as may be in the children's best interests." The plaintiff did not appeal from the September 22, 2022 order granting the defendant's application.

On October 6, 2022, the defendant filed a motion for contempt claiming that the plaintiff failed to comply with the court's September 22, 2022 order requiring the transfer of physical custody of A to the defendant by October 1, 2022. On November 9, 2022, the court held an evidentiary hearing on both the defendant's June 14, 2022 emergency application for temporary custody, which it had previously granted on September 22, 2022, but continued until November 9, 2022, as well as the defendant's October 6, 2022 motion for contempt.

At the hearing on November 9, 2022, the court heard testimony from the plaintiff and the defendant, as well as from the principal and the counselor from the children's high school. The defendant testified that the parties had failed, after multiple attempts, to make the custody exchange of A by October 1, 2022, and that the

plaintiff told him that she was trying to facilitate the custody exchange, but A did not want to go. The parties also testified about a failed attempt by the defendant to pick up A from school in order to facilitate the custody exchange, which resulted in a physical altercation between A and the defendant in the school parking lot.

The same day, the court issued an order that continued its September 22, 2022 order. The order stated: "After hearing the evidence presented, the court finds cause to continue the orders issued on September 22, 2022." The court also issued a separate order granting the defendant's motion for contempt, finding "that the defendant ha[d] carried his burden of proof by clear and convincing evidence that the plaintiff ha[d] wilfully violated a clear order of this court." Specifically, the court found "that the plaintiff ha[d] not made every effort to comply with the court's order of September 22, 2022, transferring custody of [A] to the defendant on or before October 1, 2022." The court warned "the plaintiff that she face[d] the risk of incarceration at the next hearing if she continue[d] to refuse to comply." The court stated that "the plaintiff [would] be in violation of [the] court's order if [A was] not residing full-time with the defendant (including overnight) on or before November 30, 2022." The court continued the defendant's motion for contempt to November 30, 2022, to "monitor further the plaintiff's compliance with the court's orders." During the hearing on November 30, 2022, counsel for the defendant informed the court that A had begun residing with the defendant. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court's November 9, 2022 order continuing the September 22, 2022 temporary custody order that granted the defendant sole legal custody of the parties' two children and primary physical custody of A should be reversed because (a) the defendant did not prove by a preponderance of the

evidence that there was an immediate and present risk of physical danger or psychological harm to the children sufficient to support his application and, therefore, the granting of his application was based on a clearly erroneous finding of fact, and (b) the court's award of custody to the defendant, who had been "found . . . to be a domestic abuser," was an abuse of its discretion, not in the best interests of the children, and against federal and state public policy. We address each claim in turn.

## A

We first review the plaintiff's claim that the court's November 9, 2022 order continuing the September 22, 2022 temporary custody order that granted the defendant sole legal custody of the parties' two children and sole physical custody of A should be reversed because it was based on a clearly erroneous finding that the children were in an immediate and present risk of physical danger or psychological harm.[3] We conclude that the record is inadequate for us to review this claim.[4]

[3] We note that the parties' oldest child, E, reached the age of majority while this appeal was pending. See General Statutes § 1-1d (" 'age of majority' shall be deemed to be eighteen years"). Although, ordinarily, any claims related to a child who has reached the age of majority would be moot; see *Kennedy* v. *Kennedy*, 109 Conn. App. 591, 592 n.2, 952 A.2d 115 (2008) (because parties' son reached age of majority, "[a]ny claims related to the plaintiff's rights to custody and visitation with his son are moot"); this court has held that an order of temporary custody is not subject to dismissal pursuant to the mootness doctrine due to the collateral consequences of such orders. See *R. H.* v. *M. H.*, 219 Conn. App. 716, 728 n.7, 296 A.3d 243 (2023) ("we conclude that, although the November 18, 2021 orders superseded the October 30, 2019 order, the defendant's challenge to the ex parte order is not moot because . . . a § 46b-56f order is not subject to dismissal pursuant to the mootness doctrine" (citation omitted; internal quotation marks omitted)); *Kyle S.* v. *Jayne K.*, 182 Conn. App. 353, 365, 190 A.3d 68 (2018) ("[a]s with an order pursuant to [General Statutes] § 46b-15, a § 46b-56f order is not subject to dismissal pursuant to the mootness doctrine").

[4] As noted, the plaintiff did not appeal from the September 22, 2022 order. Instead, she appealed only from the court's November 9, 2022 order continuing the September 22, 2022 temporary custody order.

"It is the responsibility of the appellant to provide an adequate record for review. The appellant shall determine whether the entire record is complete, correct and otherwise perfected for presentation on appeal." Practice Book § 61-10 (a). "This court does not presume error on the part of the trial court; error must be demonstrated by an appellant on the basis of an adequate record. . . . The general purpose of [the relevant] rules of practice . . . [requiring the appellant to provide a sufficient record] is to ensure that there is a trial court record that is adequate for an informed appellate review of the various claims presented by the parties. . . . [A]n appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record . . . . Without the necessary factual and legal conclusions . . . any decision made by us respecting [the claims raised on appeal] would be entirely speculative. . . . If an appellant fails to provide an adequate record, this court may decline to review the appellant's claim." (Internal quotation marks omitted.) *Pishal* v. *Pishal*, 212 Conn. App. 607, 615, 276 A.3d 434 (2022).

Pursuant to Practice Book § 64-1 (a),[5] the court was required to state, either orally or in writing, a decision

[5] Practice Book § 64-1 provides: "(a) The trial court shall state its decision either orally or in writing, in all of the following: (1) in rendering judgments in trials to the court in civil and criminal matters, including rulings regarding motions for stay of executions, (2) in ruling on aggravating and mitigating factors in capital penalty hearings conducted to the court, (3) in ruling on motions to dismiss under Section 41-8, (4) in ruling on motions to suppress under Section 41-12, (5) in granting a motion to set aside a verdict under Section 16-35, and (6) in making any other rulings that constitute a final judgment for purposes of appeal under Section 61-1, including those that do not terminate the proceedings. The court's decision shall encompass its conclusion as to each claim of law raised by the parties and the factual basis therefor. If oral, the decision shall be recorded by an official court reporter or court recording monitor, and, if there is an appeal, the trial court shall create a memorandum of decision for use in the appeal by ordering

that encompassed "its conclusion as to each claim of law raised by the parties and the factual basis therefor." In the present case, the court neither filed a memorandum of decision explaining its ruling nor prepared and signed a transcript of an oral ruling. With respect to its order continuing the temporary custody order, the court merely stated: "After hearing the evidence presented, the court finds cause to continue the orders issued on September 22, 2022."

Where, as here, a court has failed to comply with Practice Book § 64-1, "the appellant, who has the duty to provide an adequate record for appellate review; see Practice Book § 61-10; must file a notice to that effect with the appellate clerk in accordance with Practice Book § 64-1 (b)." *Gordon* v. *Gordon*, 148 Conn. App. 59, 67, 84 A.3d 923 (2014). "In cases in which the requirements of Practice Book § 64-1 have not been followed, this court has declined to review the claims raised on appeal due to the lack of an adequate record." (Internal quotation marks omitted.) *Pishal* v. *Pishal*, supra, 212 Conn. App. 616.

In the present case, the plaintiff claims that the court erred in continuing the emergency custody order because the evidence was insufficient to conclude that there was an immediate and present risk of physical danger or psychological harm to the children for purposes of § 46b-56f. Because the court's order does not

a transcript of the portion of the proceedings in which it stated its oral decision. The transcript of the decision shall be signed by the trial judge and filed with the clerk of the trial court. This section does not apply in small claims actions and to matters listed in Section 64-2.

"(b) If the trial judge fails to file a memorandum of decision or sign a transcript of the oral decision in any case covered by subsection (a), the appellant may file with the appellate clerk a notice that the decision has not been filed in compliance with subsection (a). The notice shall specify the trial judge involved and the date of the ruling for which no memorandum of decision was filed. The appellate clerk shall promptly notify the trial judge of the filing of the appeal and the notice. The trial court shall thereafter comply with subsection (a)."

include the factual or legal bases for its decision, and the plaintiff did not file a notice pursuant to Practice Book § 64-1 (b) with the Office of the Appellate Clerk, we are left to speculate as to the court's reasons for continuing the order and, therefore, have no basis on which to conclude that the court erred. See *White* v. *Latimer Point Condominium Assn., Inc.*, 191 Conn. App. 767, 778–79, 216 A.3d 830 (2019) ("[w]here an appellant has failed to avail himself of the full panoply of articulation and review procedures, and absent some indication to the contrary, we ordinarily read a record to support, rather than to contradict, a trial court's judgment" (internal quotation marks omitted)); *Rose B.* v. *Dawson*, 175 Conn. App. 800, 805, 169 A.3d 346 (2017) ("[t]his court will neither speculate with regard to the rationale underlying the court's decision nor, in the absence of a record that demonstrates that error exists, presume that the court acted erroneously"); *Ellen S.* v. *Katlyn F.*, 175 Conn. App. 559, 565, 167 A.3d 1182 (2017) ("It is well settled that [w]e do not presume error; the trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has satisfied its burden demonstrating the contrary. . . . Our role is not to guess at possibilities . . . but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's] claims would be entirely speculative." (Citation omitted; internal quotation marks omitted.)).[6] Accordingly, the court's November 9, 2022 order continuing the emergency custody order is affirmed.

[6] We note that, on March 13, 2023, the plaintiff filed with the trial court a motion for articulation of its November 9, 2022 decision. On March 17, 2023, the court denied that motion, stating that "[a] motion for articulation filed while an appeal is pending is properly filed with the Appellate Court, Practice Book § 66-5." On April 26, 2023, the plaintiff filed a motion for articulation with this court. Specifically, the plaintiff requested that the trial court articulate, inter alia, (1) "[u]pon what factual and legal basis . . . the trial court decide[d] to extend its order granting emergency [custody] . . .

## B

We next address the plaintiff's claim that the dispositional portion of the court's order vesting in the defendant, who had been "found . . . to be a domestic abuser," temporary legal custody of the minor children and sole physical custody of A was an abuse of its discretion, not in the best interests of the children, and against federal and state public policy. We conclude that this claim is moot and therefore dismiss it for lack of subject matter jurisdiction.[7]

"It is a [well settled] general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate

to the defendant"; (2) "[w]hat . . . the trial court determine[d] to be the 'emergency' conditions supporting [the temporary custody order]"; and (3) "[w]hat change of circumstances existed to reverse the orders of the trial court . . . regarding custody, dated March 9, 2022." On June 6, 2023, the trial court denied the plaintiff's motion for articulation, stating: "No articulation is necessary." The plaintiff did not file with this court a motion for review of the denial of its motion for articulation. Thus, the plaintiff's attempt to obtain an articulation did nothing to rectify her failure to file a notice pursuant to Practice Book § 64-1 (b) with the Office of the Appellate Clerk in this case, particularly because the motion for articulation was denied and the plaintiff did not move this court to review that denial.

[7] On June 18, 2024, this court, sua sponte, ordered the parties to file supplemental memoranda on the issue of mootness. The order provided: "The plaintiff claims on appeal, inter alia, that the dispositional portion of the court's order vesting in the defendant temporary legal custody of the minor children and sole physical custody of [A] should be reversed on the ground that a court previously had found that the defendant had engaged in domestic abuse. The parties are hereby ordered, sua sponte, to file supplemental memoranda of no more than 2000 words on or before July 2, 2024, addressing whether this claim should be dismissed as moot because: (a) the defendant no longer has legal custody of [E] by virtue of the fact that she is now over the age of eighteen; *Kennedy* v. *Kennedy*, 109 Conn. App. 591, 592 n.2, 952 A.2d 115 (2008); and (b) no longer has legal or physical custody of [A] in light of the trial court's subsequent June 4, 2024 order in this case awarding sole legal and primary physical custody of [A] to the plaintiff. See *R. H.* v. *M. H.*, 219 Conn. App. 716, 735 n.10, 296 A.3d 243 (2023)." Neither party filed a supplemental memorandum in response to the court's order.

courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *M&T Bank* v. *Lewis*, 349 Conn. 9, 20, 312 A.3d 1040 (2024). Although an order of temporary custody ordinarily is not subject to dismissal pursuant to the mootness doctrine due to the collateral consequences of such order; see *R. H.* v. *M. H.*, 219 Conn. App. 716, 728 n.7, 296 A.3d 243 (2023); this principle generally does not apply to the dispositional portion of such an order because any collateral consequences arise from the findings of cause giving rise to the dispositional order and not from the dispositional order itself. See id., 735 n.10.

The plaintiff first challenges the court's decision to award full legal custody of E to the defendant. As stated in footnote 3 of this opinion, E has reached the age of eighteen, and, therefore, the defendant no longer has legal custody of E. Although, as we also state in footnote 3 of this opinion, the plaintiff's claim challenging that portion of the court's order granting the application for temporary custody on the ground that there was an immediate and present risk of physical danger or psychological harm to E while she was in the plaintiff's custody may not be moot due to the collateral consequences of that order, the plaintiff's claim challenging just the dispositional portion of that order awarding to the defendant legal custody of E is moot because E reached the age of the majority while this appeal was pending and the defendant, therefore, no longer has legal custody over her. As a result, we cannot afford

any practical relief to the plaintiff with respect to this particular claim. Accordingly, we dismiss as moot the plaintiff's claim challenging the dispositional portion of the temporary custody order awarding sole legal custody of E to the defendant. See *A. A.-M.* v. *M. Z.*, 225 Conn. App. 46, 54, 313 A.3d 1288 (2024); *Kennedy* v. *Kennedy*, 109 Conn. App. 591, 592 n.2, 952 A.2d 115 (2008).

The plaintiff also challenges the dispositional portion of the court's order awarding sole legal and primary physical custody of A to the defendant. On February 14, 2024, while this appeal was pending, A, through an attorney who had been appointed to appear on his behalf in the trial court, filed with that court a motion seeking an order awarding to the plaintiff sole legal custody and primary physical custody over him. The record reflects that, on June 4, 2024, the trial court, upon agreement of the parties, granted A's motion. Because the defendant no longer has sole legal or primary physical custody of A, this court is incapable of granting any practical relief to the plaintiff with respect to her claim challenging the portion of the temporary custody order granting sole legal and primary physical custody of A to the defendant. As a result, we dismiss as moot the plaintiff's claim challenging the dispositional portion of the temporary custody order that awarded the defendant sole legal and primary physical custody of A. See *R. H.* v. *M. H.*, supra, 219 Conn. App. 735 n.10.

II

The plaintiff next claims that the court erred when it granted the defendant's October 6, 2022 motion for contempt on the ground that she wilfully violated the court's September 22, 2022 temporary custody order transferring sole physical custody of A to the defendant beginning on October 1, 2022. Specifically, the plaintiff argues that the court abused its discretion because

there was insufficient evidence to support the court's finding that she wilfully violated a court order. We agree with the plaintiff.

We begin by setting forth our standard of review and the relevant legal principles governing the plaintiff's claim. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense." (Internal quotation marks omitted.) *Mitchell* v. *Bogonos*, 218 Conn. App. 59, 68, 290 A.3d 825 (2023). "[C]ivil contempt is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts. . . . In part because the contempt remedy is particularly harsh . . . such punishment should not rest upon implication or conjecture, [and] the language [of the court order] declaring . . . rights should be clear, or imposing burdens [should be] specific and unequivocal, so that the parties may not be misled thereby. . . .

"To constitute contempt, it is not enough that a party has merely violated a court order; the violation must be wilful. . . . The inability of a party to obey an order of the court, without fault on his [or her] part, is a good defense to the charge of contempt. . . .

"It is the burden of the party seeking an order of contempt to prove, by clear and convincing evidence, both a clear and unambiguous directive to the alleged contemnor and the alleged contemnor's wilful noncompliance with that directive. . . . [W]e then review the trial court's determination that the violation was wilful under the abuse of discretion standard." (Citations omitted; internal quotation marks omitted.) *Puff* v. *Puff*, 334 Conn. 341, 364–66, 222 A.3d 493 (2020).

In his motion for contempt, the defendant alleged that the plaintiff had wilfully violated the court's September 22, 2022 order transferring sole physical custody

of A to the defendant beginning on October 1, 2022, because the custody exchange never occurred and the plaintiff was "unable to facilitate the court's order for parenting time." On November 9, 2022, following an evidentiary hearing, the court granted the defendant's motion for contempt. The court's decision states in relevant part that "[t]he court finds that the defendant has carried his burden of proof by clear and convincing evidence that the plaintiff has wilfully violated a clear order of this court.

"The court finds that the plaintiff has not made every effort to comply with the court's order of September 22, 2022, transferring custody of [A] to the defendant on or before October 1, 2022.

"The court understands that this is a very difficult situation. The court understands that [A] continues to refuse to obey the court's order that he reside henceforth with the defendant. The court believes, however, that the plaintiff could have taken stronger measures to enforce the court's most recent orders and has wilfully elected not to do so.

"The court finds the plaintiff in contempt. . . .

"The court advises the plaintiff that she faces the risk of incarceration at the next hearing if she continues to refuse to comply. Specifically, the plaintiff will be in violation of this court's order if [A] is not residing full-time with the defendant (including overnight) on or before November 30, 2022.

"In other words, if the plaintiff continues to allow [A] to reside at her residence after November 30, 2022, she will be in violation of this court's orders regarding custody."

At the November 9, 2022 hearing on the defendant's motion for contempt, the defendant testified that he had not had any parenting time with A since September

22, 2022. When asked why there had been no custody exchange, the defendant testified that A did not show up to the attempted custody exchanges because he "didn't want to come." The defendant further testified that the plaintiff had messaged him regarding the custody exchange that the parties had arranged to take place on October 1, 2022, at the Stratford Police Department, telling him that she was trying to facilitate the custody exchange but that A would not cooperate.

After multiple failed attempts to exchange A at the Stratford and Monroe Police Departments, the plaintiff suggested to the defendant that he pick up A at A's school. The school principal testified that, when the defendant went to A's school to pick him up, "[the defendant] specifically asked [him] not to tell [A] which parent was there . . . [and to notify A] only that he was being dismissed early . . . ." After A was informed that he was being dismissed early, he asked the principal which parent was there to pick him up. When the principal did not answer, A went back to class, and the principal informed the defendant of what had occurred. The defendant testified that he then proceeded to the school parking lot where E's car was parked to wait for school to finish so he could meet A and bring him home with him. When A approached the car, he got into E's car and told the defendant, who was waiting there, "I don't know you." E then said to the defendant that "[A] doesn't want to go with you, he doesn't have to go with you." The defendant responded that A "has no choice." The defendant testified that A then got out of the passenger seat of the car and started pushing the defendant, at which point the defendant walked away. The principal testified that, after he found out about this incident, he made the decision to call the Department of Children and Families to report that he had "[become] aware of a physical aggression between

a student and his physical and legal guardian in [the school] parking lot."[8]

The plaintiff testified that she was physically incapable of forcing the minor children to visit the defendant or engage in family therapy with him because both of them remained traumatized by the domestic violence the defendant inflicted on the family during the course of the marriage and because both children were afraid of the defendant. In reference to the initial attempted custody transfer at the local police station on October 1, 2022, the plaintiff explained A's overall reluctance to comply with the court order, stating: "I told [A] it was time to go. He—you know, I had brought suitcases for him earlier in the week, which he threw. And I had asked him, okay, well, let's just go, let's not worry about your belongings. You know, in his mind that was his room and things were staying and he wasn't taking anything. I begged and pleaded for him to just go with me to the police station, and he said, not going to happen. He was, I mean, threatening to run away." The plaintiff further testified that, after arguing back and forth with A for hours, she eventually emailed the defendant to notify him that the exchange was not going to work out that day and suggested that the defendant call A to help convince him to go. Subsequently, the plaintiff continued her efforts to comply with the court order by, inter alia, suggesting that the defendant pick A up from school as an alternative to the multiple unsuccessful planned exchanges at the local police stations.

At the conclusion of the evidentiary portion of the hearing and before ruling on the motion, the court asked both parties' attorneys for suggestions about how to accomplish the transfer of physical custody of A to the defendant. The court then suggested that the plaintiff

---

[8] It is unclear from the record what involvement, if any, the Department of Children and Families has had with the family since this report was made.

should stop providing A with a place to live. The following colloquy between the court and the plaintiff's counsel occurred:

"[The Plaintiff's Counsel]: Well, the reason—the reason I filed the motion for clarification[9] is . . . because the problems were starting to occur. And this is—it's clear [the plaintiff] cannot physically or mentally compel [A] to go see [the defendant]. She just can't accomplish it.

"The Court: She's providing him with a place to stay.

"[The Plaintiff's Counsel]: I understand.

"The Court: She can stop doing that.

"[The Plaintiff's Counsel]: Throw him out of the house?

"The Court: She can stop doing that.

---

[9] On October 6, 2022, the plaintiff filed a motion for clarification regarding the court orders issued on March 9 and September 22, 2022. Specifically, the plaintiff requested that the court clarify "which method of transfer [of custody of A] should be employed . . . ." The plaintiff explained that, pursuant to the court's March 9, 2022 memorandum of decision, " '[p]arenting exchanges shall occur at school or other activities. If the exchanges occur between the parents, they shall be at the Monroe Police Department.' " The plaintiff further claimed that, "[o]n Saturday, October 4, 2022, the defendant requested that the plaintiff transfer [A] to his custody at noon at the Stratford Police Department," and that, because she "was unable to secure [A's] agreement and cooperation to effectuate the transfer," she "suggested that the defendant accomplish the transfer by picking [A] up at school . . . ." The plaintiff stated that, "[a]s the [custody] transfer [of A, ordered by the court on September 22, 2022] was ordered for a Saturday, it was reasonable . . . to suggest that the transfer take place at the Monroe police station, but based upon the reality of the . . . circumstances, the plaintiff believes that perhaps . . . the defendant can pick up [A] from school . . . without the plaintiff's physical participation . . . . The plaintiff files the motion out of concern for complying with the court's orders before the next scheduled court date of November 9, 2022." On the basis of our review of the record, it does not appear that the court ruled on the motion or that any further action was taken on the motion.

"[The Plaintiff's Counsel]: Throw [A] out of the house? I mean, stop providing him with a place to live?

"The Court: Stop providing him with a place to live. He's supposed to be with the [defendant]. There's a clear court order. He's supposed to be with the [defendant]. Yes or no?

"[The Plaintiff's Counsel]: Yes, I agree, but I'm saying how do we physically accomplish that? How do we— she agrees. I agree. How do we get him there? I mean, do we get marshals to bring him there? That's why we thought the school thing—he might go along, but he didn't. We don't know what to do. I'm being honest about that.

"The Court: Okay. Very simple. [The] [c]ourt finds that the defendant has carried his burden of proof by clear and convincing evidence that the plaintiff has wilfully violated a clear order of this court. . . . [T]he plaintiff will be in violation of this court's order if [A] is not residing full-time with the defendant, including overnight, on or before November 30, 2022. In other words, if the plaintiff continues to allow [A] to reside at her residence after November 30, 2022, she will be in violation of this court's orders regarding custody." (Footnote added.)

On the basis of our review of the record, we agree with the plaintiff that the evidence in the record does not support the court's finding that the defendant proved by clear and convincing evidence that the plaintiff wilfully violated the court's September 22, 2022 temporary custody order transferring physical custody of A to the defendant. Neither party presented any evidence, much less clear and convincing evidence, that the plaintiff refused to transfer custody of A to the defendant, that she encouraged A not to go to the defendant, or

that she wilfully prevented A from going to the defendant. On the contrary, there was evidence that the plaintiff attempted to facilitate the transfer of physical custody of A to the defendant and that A resisted those efforts. Indeed, both parties testified that A resisted all efforts to accomplish a transfer of physical custody to the defendant.

Our case law is clear that "[a] contempt judgment cannot stand when . . . the contemnor, through no fault of his [or her] own, was unable to obey the court's order." (Internal quotation marks omitted.) *Hirschfeld* v. *Machinist*, 181 Conn. App. 309, 318, 186 A.3d 771, cert. denied, 329 Conn. 913, 186 A.3d 1170 (2018). In the present case, the record does not support the court's finding that the defendant proved by clear and convincing evidence that the plaintiff wilfully violated the September 22, 2022 order transferring to the defendant physical custody of A. Accordingly, we conclude that it was an abuse of its discretion for the court to find the plaintiff in contempt. See *Puff* v. *Puff*, supra, 334 Conn. 365 ("[t]o constitute contempt, it is not enough that a party has merely violated a court order; the violation must be wilful").

The appeal is dismissed with respect to the plaintiff's claim challenging the dispositional portion of the temporary custody order awarding sole legal custody of the minor children and primary physical custody of A to the defendant; the judgment of contempt is reversed and the case is remanded with direction to deny the defendant's October 6, 2022 motion for contempt; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.