******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# J. XAVIER PRYOR *v.* TIMOTHY BRIGNOLE ET AL.
## (AC 44253)
## (AC 44254)

Elgo, Moll and Cradle, Js.*

*Syllabus*

The plaintiff sought to recover damages for breach of a contractual nondisparagement clause in connection with anonymous letters detailing criminal charges that had been brought against the plaintiff that the defendant B allegedly sent to various news outlets. The trial court denied the defendants' special motions to dismiss, filed pursuant to the anti-SLAPP statute (§ 52-196a), and the defendants separately appealed. This court dismissed the appeals for lack of a final judgment. On the granting of certification, the defendants appealed to our Supreme Court, which held that the trial court's denials of the special motions to dismiss constituted appealable final judgments, and it reversed the judgment of this court and remanded the case to this court for further proceedings. *Held*:

This court established a bright-line rule that clarified that a moving party, to satisfy its burden under the first prong of § 52-196a (e) (3), must demonstrate that the allegations of the complaint, counterclaim or cross claim in question are predicated on conduct that implicates its right to free speech, its right to petition the government, or its right of association in connection with a matter of public concern, and the focus of that inquiry should be on the substance of those allegations as set forth in the pleadings and not on an admission or denial of those allegations by the moving party.

The trial court improperly construed the first prong of § 52-196a (e) (3) to require a moving party to admit to engaging in the conduct alleged in the operative complaint and, thus, the court improperly denied the special motions to dismiss filed by the defendants on that basis.

The plaintiff could not prevail on his claim that the trial court properly dismissed the defendants' special motions to dismiss on the basis that the conduct alleged in his complaint, which referenced the plaintiff's criminal charges, did not involve a matter of public concern.

The plaintiff could not prevail on his claim that the defendants waived their ability to file special motions to dismiss because the motions were untimely

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

filed, as the trial court implicitly granted the defendants' motions for extensions of time and the plaintiff expressly invited the court to address the merits of the special motions to dismiss.

Argued October 23, 2024—officially released April 1, 2025

*Procedural History*

Action to recover damages for breach of contract, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Budzik, J.*, denied the defendants' special motions to dismiss, from which the defendants filed separate appeals with this court, which granted the plaintiff's motions to dismiss the appeals; thereafter, the defendants, on the granting of certification, appealed to our Supreme Court, which consolidated the appeals and reversed this court's judgments and remanded the case to this court for further proceedings. *Reversed*; *further proceedings*.

*Mario K. Cerame*, for the appellant in Docket No. AC 44253 (named defendant).

*Sarah F. D'Addabbo*, for the appellant in Docket No. AC 44254 (defendant Brignole, Bush & Lewis, LLC).

*J. Xavier Pryor*, self-represented, the appellee in Docket Nos. AC 44253 and AC 44254 (plaintiff).

*Opinion*

ELGO, J. These appeals involve a novel issue of statutory interpretation regarding a legal standard for which neither the language of the statute nor its legislative history provides clear resolution. It thus falls to this court to divine, as best we can, the proper construction of that statutory standard, ever mindful that it is the prerogative of our General Assembly to modify, alter, and amend the laws of this state.

In these related appeals, the defendants, Timothy Brignole and the law firm of Brignole, Bush & Lewis,

LLC (law firm), appeal from the judgments of the trial court denying their special motions to dismiss filed pursuant to Connecticut's anti-SLAPP statute,[1] General Statutes § 52-196a, in this breach of contract action brought by the self-represented plaintiff, J. Xavier Pryor.[2] On appeal, the defendants claim that the court improperly construed § 52-196a (e) (3)[3] to require a moving party, as part of its initial burden under the first prong of that statute, to admit to engaging in the conduct alleged in the plaintiff's complaint. In response, the plaintiff argues that the alleged conduct did not involve a matter of public concern, as required by § 52-196a (e) (3), and that the defendants waived their ability to file special motions to dismiss because those motions were untimely. We agree with the defendants that the court improperly interpreted § 52-196a (e) (3) and, accordingly, reverse the judgments of the trial court.

We begin by noting that § 52-196a constitutes a "special statutory benefit"; *Lafferty* v. *Jones*, 336 Conn. 332,

---

[1] "SLAPP is an acronym for strategic lawsuit against public participation . . . ." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 336 Conn. 332, 337 n.4, 246 A.3d 429 (2020), cert. denied,      U.S.    , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021).

[2] The appeal in Docket No. AC 44253 is brought by Brignole in his individual capacity, while the appeal in Docket No. AC 44254 is brought by the law firm. Both appeals involve similar claims and briefing by the parties regarding the propriety of the court's denial of their special motions to dismiss. For that reason, we discuss them interrelatedly in this opinion.

[3] General Statutes § 52-196a (e) (3) provides: "The court shall grant a special motion to dismiss if the moving party makes an initial showing, by a preponderance of the evidence, that the opposing party's complaint, counterclaim or cross claim is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, unless the party that brought the complaint, counterclaim or cross claim sets forth with particularity the circumstances giving rise to the complaint, counterclaim or cross claim and demonstrates to the court that there is probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint, counterclaim or cross claim."

372, 246 A.3d 429 (2020), cert. denied, U.S. , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021); that "provides a moving party with the opportunity to have [a] lawsuit dismissed early in the proceeding and stays all discovery, pending the trial court's resolution of the special motion to dismiss." *Priore* v. *Haig*, 344 Conn. 636, 659, 280 A.3d 402 (2022). "A special motion to dismiss filed pursuant to § 52-196a . . . is not a traditional motion to dismiss based on a jurisdictional ground. It is, instead, a truncated evidentiary procedure enacted by our legislature in order to achieve a legitimate policy objective, namely, to provide for a prompt remedy." *Elder* v. *Kauffman*, 204 Conn. App. 818, 824, 254 A.3d 1001 (2021); see also *Smith* v. *Supple*, 346 Conn. 928, 965, 293 A.3d 851 (2023) (*D'Auria, J.*, dissenting) ("[o]n an expedited basis and on a quickly assembled record, a trial judge serves as a gatekeeper, promptly weeding out and dismissing lawsuits that plainly have been filed for [an] illegitimate purpose"); *Barry* v. *State Bar of California*, 2 Cal. 5th 318, 328, 386 P.3d 788, 212 Cal. Rptr. 3d 124 (2017) (noting "the anti-SLAPP statute's central purpose of preventing SLAPPs by ending them early and without great cost to the SLAPP target" (internal quotation marks omitted)).

Section 52-196a (e) (2) instructs that, "[w]hen ruling on a special motion to dismiss, the court shall consider pleadings and supporting and opposing affidavits of the parties attesting to the facts upon which liability or a defense, as the case may be, is based."[4] Our recitation of the relevant facts is gleaned from such materials in the record before us.

---

[4] Neither the plaintiff nor the defendants filed affidavits in support of or in opposition to the special motions to dismiss. On January 13, 2020, Brignole filed an affidavit in support of his motion for an extension of time to file a responsive pleading, which pertained only to the issue of precisely when he "discovered a copy of the summons and complaint . . . taped to a decorative door to [his] home . . . ."

At all relevant times, Brignole was the owner, manager, and principal of the law firm, which previously employed the plaintiff as an associate attorney. In 2015, the law firm brought a civil action against the plaintiff and another entity. In March, 2018, the plaintiff and the law firm resolved that action by executing a settlement agreement pursuant to which the plaintiff paid the law firm $45,000 in exchange for a general release of all causes of action. The settlement agreement also included a nondisparagement clause, under which the defendants agreed "to not disparage or criticize [the plaintiff] and to not do or say anything that could harm the [plaintiff's] interests or reputation . . . ."

On June 10, 2018, the plaintiff was arrested and charged with assault in the third degree in violation of General Statutes § 53a-61 and risk of injury to a child in violation of General Statutes § 53-21, a fact memorialized on the Judicial Branch website.[5] In his complaint, the plaintiff alleged that, on or about June 20, 2018, Brignole sent or caused to be sent to "various news outlets and persons" an anonymous letter bearing the headline "Attorney Beats Wife In Front of Child," which set forth the factual basis for the charges against the plaintiff, identified the plaintiff by his name, date of birth, and office address, and opined that his conduct was a matter of "public concern" because it implicated his fitness to practice law and that the judicial system was likely to cover up the matter due to his status as an attorney.[6] The plaintiff further alleged that Brignole

---

[5] A copy of the plaintiff's criminal case detail published on the Judicial Branch website was appended to Brignole's special motion to dismiss as an exhibit.

[6] The anonymous letter states in relevant part: "To Whom It May Concern:
"On June 10, 2018 [the plaintiff] ([o]ffice, 525 Windsor [Avenue], Windsor, CT) was arrested in West Hartford . . . on charges of [a]ssault [in the third] [d]egree 'with intent to cause grave physical injury' and [r]isk of [i]njury to a [m]inor, a [c]lass C [f]elony. While driving a car in West Hartford with his young child in the back seat, [the plaintiff] got in an argument with his wife and he punched her in the face. When he stopped the car, she fled to an

specified the plaintiff's law office as the return address on each correspondence to make it "appear that the information came from the plaintiff's staff."

The plaintiff commenced the present action on September 29, 2019.[7] His complaint contained two counts

adjacent store and called [the] police. The police observed [that] she had a swollen eye from being punched.

"Under [rule 8.4 of the] Connecticut Rules of Professional Conduct . . . it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the fitness of a lawyer. Commentary: [l]awyers are subject to discipline when they violate these rules and 'offenses involving violence, dishonesty and breach of trust are in that category.'

"I bring this to your attention out of public concern and under your watchful eye of enforcing the rules and public mandates. The fact that [the plaintiff] is a lawyer going around assaulting people reflects badly on the legal community as a whole. As a lawyer in the Hartford [c]ourts he is held to a high standard of public trust. His [w]ife and [c]hild are real victims and he needs to be held accountable. Just because he is a lawyer the system will try to cover this up. You are our [v]ictims' [a]dvocates. Help us please."

[7] Approximately three months later, the plaintiff filed a request for leave to amend his complaint. Although plaintiffs normally are permitted to seek amendment of their complaints in accordance with our rules of practice, it is unclear how that precept operates when a special motion to dismiss has been filed pursuant to § 52-196a. As we have noted, the "special statutory benefit" provided by § 52-196a; *Lafferty* v. *Jones*, supra, 336 Conn. 372; is intended to provide "a prompt remedy"; *Elder* v. *Kauffman*, supra, 204 Conn. App. 824; and to minimize expense for moving parties. For that reason, one Connecticut court recently held that "[a] plaintiff cannot avoid a special motion to dismiss by seeking leave to amend its complaint. To allow a plaintiff to do so would undermine the policy objective of providing a prompt remedy for those sued because of their exercise of their first amendment rights." *Birch Hill Recovery Center, LLC* v. *High Watch Recovery Center, Inc.*, Superior Court, judicial district of Litchfield, Docket No. CV-23-6034689-S (February 23, 2024).

In so concluding, the court relied on California precedent, which has provided guidance to the courts of this state in interpreting our anti-SLAPP statute; see, e.g., *Pryor* v. *Brignole*, 346 Conn. 534, 546 n.9, 292 A.3d 701 (2023); *Sicignano* v. *Pearce*, 228 Conn. App. 664, 686, 325 A.3d 1127 (2024), cert. denied, 351 Conn. 908,    A.3d    (2025); and stated: "California courts generally refuse to allow plaintiffs to amend their complaints to avoid a special motion to dismiss, finding it being antithetical to the purpose of an anti-SLAPP statute." *Birch Hill Recovery Center, LLC* v. *High Watch Recovery Center, Inc.*, supra, Superior Court, Docket No. CV-23-6034689-S. The court then cited a decision of the California Court of Appeal, which states: "Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from . . . [the] quick dismissal remedy. *Instead of having to show a probability of*

sounding in breach of contract. In count one, the plaintiff alleged that Brignole's actions in sending the anonymous letter constituted a breach of the nondisparagement provision of the settlement agreement, which caused him to suffer $55,533.33 in economic damages and deprived him of the benefit of the agreement. Count two incorporated by reference the allegations of count one and further alleged that Brignole "committed the

*success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading. This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend.* By the time the moving party would be able to dig out of this procedural quagmire, the SLAPP plaintiff will have succeeded in his goal of delay and distraction and running up the costs of his opponent. . . . Such a plaintiff would accomplish indirectly what could not be accomplished directly, i.e., depleting the defendant's energy and draining his or her resources. . . . This would totally frustrate the [l]egislature's objective of providing a quick and inexpensive method for unmasking and dismissing such suits." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Sylmar Air Conditioning* v. *Pueblo Contracting Services, Inc.*, 122 Cal. App. 4th 1049, 1055–56, 18 Cal. Rptr. 3d 882 (2004).

We need not resolve the novel question of whether, as a matter of Connecticut law, a party is entitled to amend their complaint following the filing of a special motion to dismiss pursuant to § 52-196a. In the present case, Brignole's counsel noted at the hearing on the special motions to dismiss that the plaintiff had recently filed a request to amend his complaint and expressed uncertainty as to how that procedural vehicle operates in the context of special motions to dismiss. Counsel then argued that his client should have an opportunity to respond to the substance of the plaintiff's request for leave to amend and—in the event that the request was granted—"to respond to [the] amended complaint with a special motion to dismiss as well." Counsel opined that "the special motion to dismiss, I think, has its own operation by statute. It's not like a normal motion to dismiss." He also volunteered to prepare "a second motion to dismiss" later that afternoon in response to the plaintiff's amended complaint "if it would help the court . . . ." Counsel further observed that the scenario in which a nonmoving party seeks to amend its complaint following the filing of a special motion to dismiss was "something that's not contemplated in the statute" and concluded by stating, "honestly, however the court sees fit to deal with it, as long as everybody's heard." In response, the court stated: "[J]ust so . . . we're clear, I'm going to deal with the pleadings as they are." The plaintiff thereafter expressed his agreement with that approach, stating: "[W]ith regard to the amended complaint, it has not been granted yet. . . . I'll concede that the amended complaint is a nullity because it hasn't been granted yet." In this appeal, the propriety of the court's decision to defer consideration of the plaintiff's request for leave to amend his complaint is not at issue.

aforementioned breach of contract in his official capacity as manager, owner, and principal" of the law firm.

On November 12, 2019, the law firm filed a motion for an extension of up to thirty days to file a responsive pleading to the complaint; Brignole filed a similar request seven days later. On November 22, 2019, Brignole, acting in a self-represented capacity,[8] filed two motions with the court. The first was a motion seeking the court's permission to extend the time to file a special motion to dismiss in accordance with § 52-196a (c).[9] The second was a special motion to dismiss the plaintiff's action pursuant to § 52-196a. At the outset of that pleading, Brignole averred that the allegations in the plaintiff's complaint were "baseless." He then stated that, "for sake of the motion, [he] takes well-pleaded facts as though they are true." With respect to the first prong of § 52-196a (e) (3), Brignole argued that the speech alleged in the plaintiff's complaint was "presumptively protected" under the first amendment and that it "falls within the aegis of § 52-196a" because criminal prosecutions are a matter of public concern. He also argued that the plaintiff could not meet his burden under the second prong of § 52-196a (e) (3), which requires the plaintiff to establish probable cause that he will prevail on the merits of his complaint.[10]

---

[8] On December 12, 2019, Attorney Mario K. Cerame filed an appearance on behalf of Brignole, who at all times thereafter has been represented by counsel.

[9] General Statutes § 52-196a (c) provides: "Any party filing a special motion to dismiss shall file such motion not later than thirty days after the return date of the complaint, or the filing of a counterclaim or cross claim described in subsection (b) of this section. The court, upon a showing of good cause by a party seeking to file a special motion to dismiss, may extend the time to file a special motion to dismiss." The return date in this case was October 15, 2019.

[10] As exhibits to his special motion to dismiss, Brignole appended copies of (1) an attorney grievance complaint that the plaintiff filed against Brignole, (2) the anonymous letter in question, (3) the plaintiff's criminal case detail from the Judicial Branch website, and (4) the written dismissal of the plaintiff's attorney grievance against Brignole issued by the "Grievance Panel for [Geographical Area Thirteen] and the Town of Hartford" on May 2, 2019.

The law firm filed a separate special motion to dismiss the plaintiff's complaint on November 27, 2019, which is similar to Brignole's special motion in all material respects. The law firm first noted that, "as a preliminary matter, [the law firm] denies the allegations in the complaint." It then argued, "taking the allegations as true," that the anonymous letter allegedly sent by Brignole constituted an exercise of his right to free speech on a matter of public concern and that the plaintiff could not meet his burden of showing probable cause that he will succeed on the merits of his breach of contract claim.

On December 6, 2019, the plaintiff filed an objection to the law firm's special motion to dismiss, claiming that it was untimely under § 52-196a (c), as it was filed more than thirty days after the return date of the complaint. Curiously, the plaintiff then stated: "In spite of the foregoing, should the court deem it appropriate, the plaintiff wishes to have [the law firm's] special motion to dismiss decided on the merits, thereby making the court's ruling the law of the case. [The law firm] has waived any claimed first amendment rights to free speech as it relates to this matter [by virtue of the nondisparagement clause of the separation agreement]. . . . [The law firm's] motion should be *denied* on the merits." (Emphasis in original.) Three weeks later, the plaintiff filed an objection to Brignole's special motion to dismiss, claiming that it was untimely under § 52-196a (c) and that Brignole had waived any claimed first amendment rights by virtue of the nondisparagement clause of the separation agreement. The plaintiff thus argued that Brignole's special motion to dismiss should be denied.

The court heard argument on the special motions to dismiss on January 13, 2020. At that time, the court

That written dismissal notes that Brignole denied the factual allegations set forth in the plaintiff's attorney grievance complaint.

invited the parties to submit supplemental briefs on the issue of whether speech that allegedly violated a nondisparagement clause could fall within the ambit of an anti-SLAPP statute.[11] Both defendants filed supplemental briefs in accordance with that directive.

In its subsequent memorandum of decision, the court rejected the defendants' argument that circulation of the anonymous letter constituted an exercise of free speech on a matter of public concern entitled to the protections of § 52-196a. The court stated that the "problem" with that contention was that Brignole, as manager, owner, and principal of the law firm, "denie[d] sending the letters at issue and, thus, denie[d] engaging in any speech at all, protected or not." The court emphasized that the defendants had "submitted no facts whatsoever from which the court can determine that . . . Brignole was exercising his free speech rights. Indeed, [the] pleadings affirmatively state that [Brignole] did not make the statements attributed to him by the complaint." The court rejected the defendants' argument that, for purposes of analyzing a moving party's burden under the first prong of § 52-196a (e) (3), a court may assume the truth of the allegations of the complaint. Rather, the court reasoned that, to properly invoke the special statutory benefit provided by § 52-196a, a moving party must make a threshold showing, by a preponderance of the evidence, that it has been sued for exercising its first amendment rights. The court concluded that the defendants had failed to meet that burden and, accordingly, denied their special motions to dismiss.[12]

---

[11] At the hearing, the court noted that § 52-196a was "relatively new" and that "there are other states that have similar statutes that are older." The court thus offered the parties an opportunity to file simultaneous supplemental briefs on the issue of whether there are any cases from other states applying their anti-SLAPP statutes in a factual scenario similar to the present case.

[12] Although the plaintiff argued that § 52-196a does not apply to speech that violates a nondisparagement clause between the parties, the trial court did not address that issue. As our Supreme Court has noted, that issue of contractual waiver "more properly [is] considered under the second [prong]

From those judgments, the defendants filed separate appeals with this court. The plaintiff thereafter filed motions to dismiss those appeals for lack of an appealable final judgment, which this court granted. The defendants appealed the propriety of that determination to our Supreme Court, which, in a divided opinion, concluded that a trial court's denial of a colorable special motion to dismiss filed pursuant to § 52-196a is an appealable final judgment under *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). See *Pryor* v. *Brignole*, 346 Conn. 534, 538, 292 A.3d 701 (2023).[13] The court thus remanded the appeals to this court "for further proceedings according to law." Id., 546. In accordance with that directive, we now consider the claims presented by the parties in these appeals.

of § 52-196a (e) (3)." *Pryor* v. *Brignole*, 346 Conn. 534, 546 n.9, 292 A.3d 701 (2023); accord *Thompson* v. *Inglewood Unified School District*, Docket No. B264151, 2016 WL 5462850, *5 n.4 (Cal. App. September 29, 2016) (explaining that "[t]he mere existence of the non-disparagement clause does not defeat defendants' ability to meet their burden" under step one of California's anti-SLAPP statute and that, "[w]hether [the] speech violated the non-disparagement clause is an issue more appropriately addressed in the step [two] probability of prevailing on the claims analysis"); *Lowes* v. *Thompson*, 331 Or. App. 406, 411, 546 P.3d 311 ("unchallenged evidence of a waiver of the rights protected by the anti-SLAPP statute can satisfy a plaintiff's burden to defeat an anti-SLAPP motion once a defendant has satisfied [its] burden at the first step"), review allowed, 372 Or. 560, 551 P.3d 398 (2024). In this appeal, the plaintiff has not raised that contractual waiver issue as an alternative ground of affirmance pursuant to Practice Book § 63-4 (a) (1), and the parties have not briefed it. Accordingly, it is not properly before us.

In addition, we note that the trial court did not explicitly rule on the timeliness objection raised by the plaintiff, which we discuss in part III of this opinion. The court also did not reach the issue of whether the plaintiff satisfied his burden under the second prong of § 52-196a (e) (3) to establish probable cause that he will prevail on the merits of his complaint. That issue, which encompasses the contractual waiver claim raised by the plaintiff in its objections to the special motions to dismiss; see *Pryor* v. *Brignole*, supra, 346 Conn. 546 n.9; is a matter for the court to resolve on remand.

[13] Our Supreme Court likewise was divided in two companion cases released the same day as *Pryor* v. *Brignole*, supra, 346 Conn. 534. See *Robinson* v. *V. D.*, 346 Conn. 1002, 293 A.3d 345 (2023); *Smith* v. *Supple*, supra, 346 Conn. 928.

I

On appeal, the defendants claim that the court improperly concluded that they could not meet their initial burden under § 52-196a (e) (3) of demonstrating that the plaintiff's complaint was based on Brignole's exercise of the right to free speech in light of their denial that Brignole engaged in the conduct alleged therein—namely, sending the anonymous letter regarding the plaintiff's June 10, 2018 arrest to various news outlets and persons. The defendants submit that the pertinent inquiry under the first prong of § 52-196a (e) (3) focuses on the allegations of the complaint, counterclaim or cross claim and does not require a moving party to admit to any facts. That claim presents a question of first impression in this state.[14]

The defendants' claim involves an issue of statutory interpretation, over which our review is plenary. See, e.g., *777 Residential, LLC* v. *Metropolitan District Commission*, 336 Conn. 819, 827, 251 A.3d 56 (2020). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall

---

[14] The plaintiff did not address the defendants' claim regarding the proper interpretation of § 52-196a (e) (3) in his appellate briefs or at oral argument before this court. The burden nonetheless remains on the defendants, as appellants, to establish reversible error on the part of the trial court. See *Jalbert* v. *Mulligan*, 153 Conn. App. 124, 145, 101 A.3d 279, cert. denied, 315 Conn. 901, 104 A.3d 107 (2014).

not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . .'' (Internal quotation marks omitted.) *Vitti* v. *Milford*, 336 Conn. 654, 660, 249 A.3d 726 (2020).

A

Our analysis, as always, begins with the language of the statute, which ''affords a defendant a substantive right to avoid litigation on the merits that can be costly and burdensome''; *Smith* v. *Supple*, supra, 346 Conn. 949; through ''the dismissal of a SLAPP suit.'' Id., 935. The statutory right to seek such a dismissal is memorialized in § 52-196a (b), which provides: ''In any civil action in which a party files a complaint, counterclaim or cross claim against an opposing party that is based on the opposing party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, such opposing party may file a special motion to dismiss the complaint, counterclaim or cross claim.''[15] The subsections that follow set forth the procedure that governs the exercise of that right. See, e.g., General Statutes § 52-196a (c) (setting deadline to file

_____

[15] General Statutes § 52-196a (a) (2) defines '' '[r]ight of free speech' '' as ''communicating, or conduct furthering communication, in a public forum on a matter of public concern . . . .''

General Statutes § 52-196a (a) (3) defines '' '[r]ight to petition the government' '' as ''(A) communication in connection with an issue under consideration or review by a legislative, executive, administrative, judicial or other governmental body, (B) communication that is reasonably likely to encourage consideration or review of a matter of public concern by a legislative, executive, administrative, judicial or other governmental body, or (C) communication that is reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, administrative, judicial or other governmental body . . . .''

special motion to dismiss); General Statutes § 52-196a (d) (providing for stay of discovery upon filing of special motion to dismiss); General Statutes § 52-196a (f) (providing for award of costs and attorney's fees to prevailing party).

Section 52-196a (e) pertains to the conduct of the court in acting on a special motion to dismiss. See General Statutes § 52-196a (e) (1) (requiring court to hold expedited hearing on special motion to dismiss); General Statutes § 52-196a (e) (2) (requiring court to consider pleadings and affidavits of parties in ruling on special motion to dismiss); General Statutes § 52-196a (e) (4) (requiring court to rule on special motion to dismiss "as soon as practicable"). The subdivision at issue here, § 52-196a (e) (3), specifies the legal standard to be applied by the trial court in ruling on a special motion to dismiss. It provides: "The court shall grant a special motion to dismiss if the moving party makes an initial showing, by a preponderance of the evidence,[16] that the opposing party's complaint, counterclaim or cross claim is based on the moving party's exercise of its right of free speech, right to petition the government,

General Statutes § 52-196a (a) (4) defines " '[r]ight of association' " as "communication among individuals who join together to collectively express, promote, pursue or defend common interests . . . ."

[16] To be clear, although § 52-196a (e) (3) references the preponderance of the evidence standard, the statutory scheme does not provide for an evidentiary hearing of any kind. Rather, the court is obligated to hold an expedited hearing on the special motion to dismiss and thereafter render a ruling in light of the "pleadings and supporting and opposing affidavits of the parties attesting to the facts upon which liability or a defense, as the case may be, is based." General Statutes § 52-196a (e) (2). We note in this regard that, during the legislative debate on the bill that became § 52-196a, Representative Doug Dubitsky inquired as to whether it contemplated "an evidentiary hearing that would take place . . . ." 60 H.R. Proc., Pt. 16, 2017 Sess., p. 6888. In response, Representative William Tong explained: "I think it contemplates that the court will certainly conduct a hearing. It doesn't contemplate that a specific evidentiary hearing so docketed would occur but it provides that there will be a hearing on the evidence presented, the pleading, supporting and opposing affidavits . . . ." Id., p. 6889.

or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, unless the party that brought the complaint, counterclaim or cross claim sets forth with particularity the circumstances giving rise to the complaint, counterclaim or cross claim and demonstrates to the court that there is probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint, counterclaim or cross claim."[17] (Footnote added.) General Statutes § 52-196a (e) (3).

"[I]n deciding a special motion to dismiss under § 52-196a (e) (3), Connecticut courts must undertake a two-pronged, burden shifting analysis." *Smith* v. *Supple*, supra, 346 Conn. 933. "Pursuant to § 52-196a (e) (3), a party that files a special motion to dismiss bears the initial burden of demonstrating, by a preponderance of the evidence, that the opposing party's complaint . . . is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association . . . in connection with a matter of public concern . . . . If that burden is met, the burden shifts to the party that brought the complaint to demonstrate that there is probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint . . . . For a special motion to dismiss to be granted, the court must resolve both prongs in favor of the moving party." (Citation omitted; internal quotation marks omitted.) *Mulvihill* v. *Spinnato*, 228 Conn. App. 781, 787–88, 326 A.3d 251, cert. denied, 350 Conn. 926, 326 A.3d 248 (2024). In the present case, the court concluded that the defendants had not met their burden under the first prong of § 52-196a (e) (3) and

---

[17] Section 52-196a (g) provides that any findings or determinations made by the court pursuant to § 52-196a (e) "shall not be admitted into evidence at any later stage of the proceeding or in any subsequent action."

therefore did not consider whether the plaintiff satisfied his corresponding burden under its second prong.

Our analysis, therefore, focuses on the first prong of § 52-196a (e) (3), which obligates the moving party to establish "that the opposing party's complaint, counter-claim or cross claim is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association" under the federal or state constitutions.[18] In construing that language, the defendants emphasize that it centers on the nature of the complaint at issue. They contend that the salient question under the first prong is whether a fair reading of the complaint indicates that it pertains to alleged conduct that may be considered an exercise of first amendment rights. In their view, whether or not the moving party admits or denies those allegations is irrele-vant to that threshold inquiry. The defendants further argue that a contrary construction would deprive defen-dants of protection for anonymous speech and situa-tions in which a plaintiff patently lies about a defen-dant's speech or conduct. Moreover, because the second prong of § 52-196a (e) (3) involves a merits based analysis to determine whether the plaintiff has established probable cause of prevailing on the com-plaint, the defendants argue that the moving party's admission or denial of the material allegations more properly is considered as part of that secondary analy-sis.

In its memorandum of decision, the trial court adopted a different construction. Because § 52-196a (b) and (e) (3) explicitly require proof that a complaint is based on the moving party's *exercise* of its first amend-ment rights, the court concluded that a party may avail

---

[18] We note that § 52-196a (b), which memorializes the statutory right to seek a prompt dismissal of a SLAPP suit at the outset of litigation, contains largely identical language.

itself of the special motion to dismiss procedure authorized by § 52-196a—and meet its statutory burden under the first prong of § 52-196a (e) (3)—only when it acknowledges that it has exercised those rights as alleged in the complaint. In this regard, we note that Connecticut's anti-SLAPP statute was enacted "to address situations in which people have spoken out on matters of public concern" and thereafter were subjected to abusive litigation. (Internal quotation marks omitted.) *Lafferty* v. *Jones*, supra, 336 Conn. 382 n.36; see also *Smith* v. *Supple*, supra, 346 Conn. 944 n.13 (§ 52-196a is intended to provide "a mechanism that can save money for defendants that are wrongly targeted for simply *exercising* their rights . . . on the [first] [a]mendment and other matters of public concern" (emphasis added; internal quotation marks omitted)). When a moving party pursuing a special motion to dismiss denies exercising its first amendment rights, the protections provided by § 52-196a arguably have no application. See *Pryor* v. *Brignole*, supra, 346 Conn. 552 (*D'Auria, J.*, dissenting).

Under our rules of statutory construction, ambiguity arises whenever statutory language is subject to more than one plausible interpretation. See, e.g., *Redding* v. *Georgetown Land Development Co., LLC*, 337 Conn. 75, 84 n.9, 251 A.3d 980 (2020) ("[o]ur case law is clear that ambiguity exists only if the statutory language at issue is susceptible to more than one plausible interpretation" (internal quotation marks omitted)); *Commissioner of Correction* v. *Freedom of Information Commission*, 307 Conn. 53, 68, 52 A.3d 636 (2012) ("[b]ecause we believe that both of these interpretations are plausible, we conclude that the language [in question] is ambiguous"). In our view, it is plausible that the legislature intended the inquiry under the first prong of § 52-196a (e) (3) to focus exclusively on the allegations of the complaint to determine whether they

allege conduct that implicates the moving party's first amendment rights, particularly because the second prong of § 52-196a (e) (3) entails a merits based determination. At the same time, it is equally plausible that the legislature's repeated use of the phrase "based on the moving party's exercise" of its first amendment rights in § 52-196a (b) and (e) (3) was a deliberate attempt to confine the protections of our anti-SLAPP statute to parties that had, in fact, exercised those rights. Under that scenario, the first prong of § 52-196a (e) (3) would require the moving party, as part of its initial burden, to demonstrate that it had engaged in the exercise of first amendment rights. We therefore conclude that the statutory language in question is subject to more than one plausible interpretation. For that reason, § 52-196a (e) (3) is ambiguous as applied to the facts of this case. Accordingly, resort to extratextual materials is warranted. See, e.g., *State* v. *Fernando A.*, 294 Conn. 1, 17, 981 A.2d 427 (2009).

B

The legislative history of § 52-196a provides important context for the present discussion.[19] It nevertheless does not resolve the novel question before us.

In 2017, the legislature passed No. 17-71 of the 2017 Public Acts (P.A. 17-71), which became effective on January 1, 2018, joining dozens of states that already had enacted anti-SLAPP statutes. The legislative history of P.A. 17-71, §1, indicates that it was modeled after anti-SLAPP statutes from other states. See 60 S. Proc., Pt. 6, 2017 Sess., p. 2236, remarks of Senator John A. Kissel (explaining that P.A. 17-71 "is a compilation of some of the best laws . . . from throughout the United States"); 60 H.R. Proc., Pt. 16, 2017 Sess., p. 6884, remarks of Representative William Tong (noting that

---

[19] Neither the plaintiff nor the defendants discuss the legislative history of § 52-196a in any manner in their respective appellate briefs.

"twenty-nine other states have adopted . . . legislation very similar to the construct we have here"). As Klarn DePalma, vice president and general manager at WFSB-TV 3, testified at the hearing on P.A. 17-71, the language of the proposed bill was "similar to [existing anti-SLAPP statutes in] California, Oregon, Texas and Washington." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 8, 2017 Sess., p. 4602.

The legislative history also indicates that, in enacting P.A. 17-71, our General Assembly sought to balance a defendant's first amendment rights with a plaintiff's right to pursue a claim in our courts, a right guaranteed by our state constitution.[20] As DePalma testified, P.A. 17-71 "would protect individuals and organizations that speak, petition the government, and associate with others on [a] matter of public [concern] from lengthy, expensive litigation, while preserving the ability of people and businesses to file meritorious lawsuits." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 8, 2017 Sess., p. 4602. Eric Parker, an investigative reporter, testified similarly that P.A. 17-71 "gives defendants a way to short circuit litigation that's only designed to harass, threaten and intimidate. It sets up a clear test. If the complaint shows a bare minimum of validity, it moves forward. If it does not, the defendant can end the litigation quickly and without the months of delays and expenses that come with it. It doesn't mean valid lawsuits won't get prosecuted. Those claims do exist and they should be allowed to move forward. The plaintiffs deserve every ounce of the rights the courts give them. But when a lawsuit aims to just silence free speech, especially on a matter of public concern, this bill establishes a special motion to dismiss." Conn.

---

[20] The constitution of Connecticut, article first, § 10, provides in relevant part: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law . . . ."

Joint Standing Committee Hearings, Judiciary, Pt. 9, 2017 Sess., pp. 4779–80.

The legislative debate on P.A. 17-71 also demonstrates that the General Assembly was keenly aware of the need to balance those constitutional interests. As Representative Rosa C. Rebimbas noted: "[T]his legislation does provide for an expedited hearing and the purpose . . . [strikes] a gentle balance between free speech by being able to resolve any issues once it's brought before the court's attention . . . ." 60 H.R. Proc., supra, pp. 6881–82. Representative Tong, who sponsored the bill in the House of Representatives, likewise recognized that a plaintiff who files suit "has generally a right to have his or her claims heard . . . ." Id., p. 6909; accord *Palazzo* v. *Alves*, 944 A.2d 144, 150 n.11 (R.I. 2008) (anti-SLAPP statutes "pit two sets of fundamental constitutional rights against each other: (1) defendants' rights of free speech and petition and (2) plaintiffs' rights of access to the judicial system and rights to non-falsely maligned reputations" (internal quotation marks omitted)). The proper construction of § 52-196a, therefore, must be cognizant of those constitutional interests.

Unfortunately, the legislative history is silent on the precise question before us, which is whether a moving party may satisfy its initial burden under the first prong of § 52-196a (e) (3) without admitting to engaging in an exercise of a first amendment right. Moreover, the legislative history contains statements that support the competing constructions advanced by the defendants and the trial court.

The trial court construed the first prong of § 52-196a (e) (3) as requiring the moving party to demonstrate, as part of its initial burden, that it had engaged in the exercise of a first amendment right. That interpretation is supported by several statements in the legislative

history that suggest that § 52-196a was enacted to protect parties who had, in fact, exercised those rights. As Representative Tong stated: "[T]he statute contemplates that the person [who brings a special motion to dismiss] is exercising their right of free speech, their right of petition, their right of association . . . ." 60 H.R. Proc., supra, p. 6895. Tong similarly stated that P.A. 17-71 "provides for a special motion to dismiss so that early in the process *somebody who's speaking and exercised their constitutional right* can try to dismiss a frivolous or abusive claim that has no merit . . . ." (Emphasis added.) Id., p. 6879. Tong later remarked that "the purpose of the statute and the way that it operates is to provide that a [party] can dismiss a claim . . . because they're exercising their constitutional right to free speech." Id., p. 6950; see also Conn. Joint Standing Committee Hearings, Judiciary, Pt. 8, 2017 Sess., p. 4602 (statement of DePalma that P.A. 17-71 "would protect individuals and organizations that speak, petition the government, and associate with others on [a] matter of public [concern]"); Conn. Joint Standing Committee Hearings, Judiciary, Pt. 9, 2017 Sess., p. 4917 (letter from Michael P. Ryan, president of the Connecticut Broadcasters Association, explaining that "anti-SLAPP laws were enacted [in other states] to help private citizens who spoke out at public hearings"); id., p. 4929 (letter from Motion Picture Association of America noting that "SLAPP suits are baseless lawsuits brought for the purpose of silencing those who exercise their [f]irst [a]mendment rights" and expressing support for anti-SLAPP statutes, "which provide a means for those sued for [the] exercise of their [f]irst [a]mendment rights on public issues"); id., p. 4922 (letter from David McGuire, executive director of American Civil Liberties Union of Connecticut, stating that "a SLAPP suit . . . is a civil lawsuit or counterclaim filed against individuals or organizations who speak out on issues of public interest or concern").

At the same time, the legislative history contains other statements that may be read to support the defendants' contention the legislature intended the inquiry under the first prong of § 52-196a (e) (3) to focus exclusively on the allegations of the complaint to determine whether they allege conduct that implicates the moving party's first amendment rights, thereby permitting the moving party to deny or assume the truth of the allegations for purposes of that analysis. During the debate in the House of Representatives, Representative Richard A. Smith raised a question on the "section [of P.A. 17-71] that gives the [trial court] some guidance to decide on how or whether or not to grant this type of motion?" 60 H.R. Proc., supra, p. 6902. In response, Representative Tong referenced the provision of P.A. 17-71 that set forth "the relative burdens among the parties" and explained that it required the moving party "to make . . . a competent showing before the court that in fact *a claim implicates* the exercise of a constitutional right . . . ." (Emphasis added.) Id. Later in that debate, Representative Arthur J. O'Neill remarked: "I thought that . . . the person filing a special motion to dismiss . . . had to show [that] the subject matter of the lawsuit was a matter of public concern or a right to freedom of speech or a right to petition the government and a right of association, which is given a definition; and if that's what is in effect being targeted—*one of those rights is the target of the underlying lawsuit.*" (Emphasis added.) Id., p. 6938; cf. 60 S. Proc., supra, p. 2235, remarks of Senator Paul R. Doyle ("the real intent of the legislation is to assist people that are sued on their free speech rights to have a means to quickly get rid of frivolous lawsuits").

Although legislative history can be illuminating when it documents a clear intention on the part of legislators in enacting a given statute, it provides little guidance when it contains conflicting statements or a clouded

reflection of legislative deliberation. See, e.g., *Exxon Mobil Corp.* v. *Allapattah Services, Inc.*, 545 U.S. 546, 568, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005) ("[L]egislative history is itself often murky, ambiguous, and contradictory. Judicial investigation of legislative history has a tendency to become . . . an exercise in looking over a crowd and picking out your friends." (Internal quotation marks omitted.)); *Washington Alliance of Technology Workers* v. *Dept. of Homeland Security*, 50 F.4th 164, 203 n.10 (D.C. Cir. 2022) (Henderson, J., concurring) (noting "the danger of using legislative history" when it contains "conflicting legislative history"), cert. denied, U.S. , 144 S. Ct. 78, 217 L. Ed. 2d 14 (2023); *Gaylor* v. *Mnuchin*, 919 F.3d 420, 431 (7th Cir. 2019) ("[c]onflicting statements among members of Congress . . . reveal the unreliability of this legislative history"); *Little* v. *Shell Exploration & Production Co.*, 690 F.3d 282, 291 (5th Cir. 2012) ("[t]he divergent messages that can be obtained from legislative history render [it] prone to selective use"); *In re Sinclair*, 870 F.2d 1340, 1343 (7th Cir. 1989) ("[o]ften there is so much legislative history that a court can manipulate the meaning of a law by choosing which snippets to emphasize"); *DuBaldo Electric, LLC* v. *Montagno Construction, Inc.*, 119 Conn. App. 423, 451–52, 988 A.2d 351 (2010) (concluding that, because "[t]he legislative history surrounding [General Statutes] § 52-249a is murky" and "[c]ertain portions of the legislative history support the claims of each party," "[t]he legislative history of § 52-249a plainly is not a clear and unequivocal expression of intent"). Given the murky, and at times contradictory, nature of the legislative history of § 52-196a, we cannot resolve the interpretive question before us on that basis alone.

C

As our Supreme Court has observed, § 52-196a "affords a defendant a substantive right to avoid litigation on the merits that can be costly and burdensome

. . . ." *Smith* v. *Supple*, supra, 346 Conn. 949. The defendants thus argue that § 52-196a must be broadly construed in favor of parties that file special motions to dismiss, consistent with the maxim that remedial statutes are to be "liberally construed in favor of those whom the legislature intended to benefit." (Internal quotation marks omitted.) *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 492, 656 A.2d 1009 (1995).

We perceive several problems with the defendants' contention. Although the aim of § 52-196a undoubtedly is salutary, the scant legislative history on this point suggests that the General Assembly intended its application to be narrow, rather than far-reaching, in scope. See 60 S. Proc., supra, p. 2237, remarks of Senator Kissel (explaining that legislature "worked very closely with the Connecticut Trial Lawyers Association to make sure that it was not overly broad" and that "it is narrowly tailored for these [SLAPP] suits which have . . . a chilling effect on first amendment rights"); Conn. Joint Standing Committee Hearings, Judiciary, Pt. 9, 2017 Sess., p. 4922 (letter from American Civil Liberties Union of Connecticut expressing support for "a carefully calibrated anti-SLAPP legislation").

Moreover, had the legislature intended to mandate a broad interpretation of § 52-196a, it certainly knew how to do so; see *Genesky* v. *East Lyme*, 275 Conn. 246, 258, 881 A.2d 114 (2005); as it expressly has done in other contexts. See, e.g., General Statutes § 9-368o ("[a]ny provision of the general statutes . . . relating to the right to vote shall be construed liberally"); General Statutes § 10a-109p ("[§§] 10a-109a to 10a-109y, inclusive, being necessary for the welfare of the state and its inhabitants, shall be liberally construed to effect the purposes thereof"); General Statutes § 38a-861 ("[§§] 38a-858 to 38a-875, inclusive, shall be liberally construed to effect the purpose under [§] 38a-859");

General Statutes § 45a-468 (b) ("[§§] 45a-468 to 45a-468m, inclusive, and [§] 45a-369 shall be liberally construed and applied to promote its underlying purposes"). The legislature did not include such a directive in our anti-SLAPP statute. Contra Cal. Civ. Proc. Code § 425.16 (a) (Deering Supp. 2021) (California anti-SLAPP statute "shall be construed broadly"); Kan. Stat. Ann. § 60-5320 (k) (2016) ("[t]he provisions of the [Kansas anti-SLAPP statute] shall be applied and construed liberally to effectuate its general purposes"); Or. Rev. Stat. Ann. § 31.152 (6) (West 2017) (Oregon anti-SLAPP statute "to be liberally construed in favor of the exercise" of first amendment rights).

In addition, the legislative history plainly indicates that the General Assembly, in enacting § 52-196a, was cognizant of the need to carefully balance a defendant's first amendment rights with a plaintiff's right to pursue a claim in our courts, a right secured under article first, § 10, of our state constitution. See 60 H.R. Proc., supra, pp. 6881–82, remarks of Representative Rebimbas ("this legislation does provide for an expedited hearing and the purpose . . . [strikes] a gentle balance between free speech by being able to resolve any issues once it's brought before the court's attention"); id., p. 6909, remarks of Representative Tong (explaining that plaintiff who files lawsuit "has generally a right to have his or her claims heard"); Conn. Joint Standing Committee Hearings, Judiciary, Pt. 9, 2017 Sess., p. 4780, testimony of Eric Parker ("valid lawsuits" should "be allowed to move forward" and plaintiffs who bring them "deserve every ounce of the rights the courts give them"); see also *Smith* v. *Supple*, supra, 346 Conn. 967 (*D'Auria, J.*, dissenting) (legislative history of § 52-196a indicates that "the legislature balanced the rights of plaintiffs who claim damages to pursue legal action in our courts . . . and the rights of defendants who claim that the action is nothing more than retaliation for exercising

their protected constitutional rights" (citation omitted; footnote omitted)). Because the legislature expressly acknowledged the competing constitutional interests at stake and delicately balanced them in crafting § 52-196a, we are hesitant to mandate a liberal construction of that statute in favor of moving parties, as urged by the defendants. Indeed, in the seven years since it was enacted, neither our Supreme Court nor any Connecticut court has applied that maxim of statutory interpretation to § 52-196a. We decline the defendants' invitation to do so now.

## D

The legislative history of § 52-196a also indicates that it was predicated on, and borrowed heavily from, anti-SLAPP statutes enacted in other states.[21] See 60 S. Proc., Pt. 6, 2017 Sess., p. 2236, remarks of Senator Kissel; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 8, 2017 Sess., p. 4602, remarks of Klarn DePalma; see also *Smith* v. *Supple*, supra, 346 Conn. 953 n.22 ("[a]n examination of . . . sister state case law is particularly instructive . . . because the legislative history of our anti-SLAPP statute signifies that it was modeled after anti-SLAPP statutes that came before it in other states"). For that reason, a review of relevant authority from sibling states is pertinent to the present inquiry.

We begin with a case from Texas, whose anti-SLAPP statute served as a model for § 52-196a. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 8, 2017 Sess., p. 4602, remarks of Klarn DePalma. Like § 52-196a, the Texas anti-SLAPP statute "provides a procedure for expeditiously dismissing a non-meritorious

---

[21] As one court noted, "[o]ver thirty states now have anti-SLAPP statutes in place, and while the particular language varies, the stated purpose of anti-SLAPP legislation is consistent." *Nandigam Neurology, PLC* v. *Beavers*, 639 S.W.3d 651, 659 (Tenn. App. 2021).

legal action that is based on, relates to, or is in response to the party's exercise of . . . the right of free speech . . . defined as a communication made in connection with a matter of public concern." (Footnote omitted; internal quotation marks omitted.) *Hersh* v. *Tatum*, 526 S.W.3d 462, 463 (Tex. 2017). Moreover, like § 52-196a (e) (3), the legal standard articulated in the Texas anti-SLAPP statute contains two prongs that impose reciprocal burdens on parties. See Tex. Civil Code Ann. § 27.005 (West 2019). Under its first prong, a party may move to dismiss a civil action if that action "is based on, relates to, or is in response to a party's exercise of . . . the right of free speech . . . the right to petition; or . . . the right of association . . . ." Tex. Civil Code Ann. § 27.005 (b) (1) (West 2019). As with Connecticut's anti-SLAPP statute; see General Statutes § 52-196a (e) (2); the Texas anti-SLAPP statute directs its courts to consider, inter alia, "the pleadings" and the "supporting and opposing affidavits stating the facts on which the liability or defense is based."[22] Tex. Civil Code Ann. § 27.006 (West 2019).

In *Hersh* v. *Tatum*, supra, 526 S.W.3d 463, the Texas Supreme Court confronted the precise question now before this court—whether "a defendant [may] obtain dismissal of a suit [under the first prong of Tex. Civil Code Ann. § 27.005] alleging such a communication if she denies making it?" The defendant in that case denied making the statements in question; in response,

---

[22] Like other jurisdictions, Texas has seen a proliferation of appellate litigation since adopting its anti-SLAPP statute. As one commentator notes: "Since being enacted in 2011, the Texas Anti-SLAPP statute is by far the subject of more appeals than any other topic. Texas courts of appeals have issued already over 350 opinions concerning the statute's reach, while dozens more await rulings. At least 15 anti-SLAPP cases are now pending in the Texas Supreme Court. No one should be surprised to learn that more than one in ten of the opinions now coming out of the appellate courts of Texas concern anti-SLAPP." D. Felton, "Avoid the SLAPP Trap," 57 Houston Law. 22 (2019).

the plaintiffs "argued that [the defendant] cannot invoke the [anti-SLAPP statute] while continuing to deny . . . the communication that is the basis of their complaint." Id., 465. After the trial court granted the defendant's motion to dismiss, the Texas Court of Appeals—like the trial court in the present case—concluded that "a defendant who denies making the communication alleged [in the plaintiff's complaint] cannot invoke" the protections of the anti-SLAPP statute. Id.

On appeal, the Texas Supreme Court disagreed with that determination. In so doing, it emphasized that the anti-SLAPP statute obligates the trial court, in ruling on a special motion to dismiss, to consider the pleadings, and the complaint in particular. As it stated: "Indeed, it would be impossible to determine the basis of a legal action, and thus the applicability of the [anti-SLAPP statute], *without* considering the plaintiff's petition. . . . [T]he plaintiff's petition . . . is the best and all-sufficient evidence of the nature of the action. . . . The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations." (Emphasis in original; footnote omitted; internal quotation marks omitted.) Id., 467. The court thus reasoned that, "[w]hen it is clear from the plaintiff's pleadings that the action is covered by the [anti-SLAPP statute], the defendant need show no more [under the first prong of the legal standard set forth therein]. . . . [A] defendant moving for dismissal need show only that the plaintiff's 'legal action is based on, relates to, or is in response to the [defendant's] exercise of . . . the right of free speech' . . . that is, 'a communication made in connection with a matter of public concern' . . . not that the communication actually occurred." (Footnotes omitted.) Id. Accordingly, the Texas Supreme Court concluded that the defendant had satisfied her burden under the first prong of the anti-SLAPP

statute "[b]y relying on the language used" in the plaintiffs' complaint. Id., 468.

The Supreme Court of Nevada reached a similar result in *Spirtos* v. *Yemenidjian*, 137 Nev. 711, 499 P.3d 611 (2021). As our Supreme Court has observed, Nevada's anti-SLAPP statute is "similarly worded" to § 52-196a. *Pryor* v. *Brignole*, supra, 346 Conn. 544. Like § 52-196a (e) (3), Nevada's anti-SLAPP statute mandates that, "[u]nder step one of the anti-SLAPP evaluation, the [trial] court must '[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern.'" *Spirtos* v. *Yemenidjian*, supra, 711. The question presented in *Spirtos* was "how a [trial] court at step one of the anti-SLAPP evaluation should proceed when the moving party denies making the alleged communication." Id. Because that first prong centers on the "claim" asserted against a defendant, the court reasoned that the trial court "should evaluate the statement forming the basis of the plaintiff's complaint, which, in this case was the version of the statement that [the plaintiff] alleged [that the defendant] made." Id., 715. The court explained that, "at step one of the anti-SLAPP analysis, a [trial] court and this court must evaluate the communication as it is alleged in the plaintiff's complaint and in any of the plaintiff's clarifying declarations." Id. For that reason, the Supreme Court of Nevada concluded that "a moving party's denial that he or she made the alleged statements has no relevance at step one of the anti-SLAPP evaluation." Id., 720.

Also germane to the inquiry before us is a decision of the Court of Appeals of Kansas. In *T & T Financial of Kansas City*, *LLC* v. *Taylor*, 2017 WL 6546634, *1

(Kan. App. December 22, 2017) (unpublished opinion),[23] the trial court denied a motion to dismiss a defamation action pursuant to the Kansas anti-SLAPP statute "for the sole reason that [the defendant] denied making some of the communications identified" in the plaintiff's complaint; id., *4; the same basis on which the trial court denied the special motion to dismiss in the present case. In reviewing the propriety of that legal determination, the Court of Appeals of Kansas first noted that the anti-SLAPP statute, Kan. Stat. Ann. § 60-5320 (d),[24] "requires a two-step analysis for the [trial] court to determine if the motion to strike should be granted. First, a party bringing the motion to strike has the initial burden of showing that the claim against which the motion is based concerns a party's exercise of the right of free speech, the right to petition, or the right of association. Second, if the moving party meets this initial burden, the burden then shifts to the responding party to establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case." Id.

Like the trial court in the present case, the plaintiff in *T & T Financial of Kansas City, LLC*, focused on

---

[23] *T & T Financial of Kansas City, LLC*, was not designated for publication. Its reasoning nonetheless was adopted by the Court of Appeals of Kansas in the subsequent decision of *Doe* v. *Kansas State University*, 61 Kan. App. 2d 128, 143, 499 P.3d 1136 (2021).

[24] The legal standard set forth in Kansas' anti-SLAPP statute is similar to that contained in § 52-196a (e) (3). It provides in relevant part: "A party may bring a motion to strike the claim if a claim is based on, relates to or is in response to a party's exercise of the right of free speech, right to petition or right of association. A party bringing the motion to strike has the initial burden of making a prima facie case showing the claim against which the motion is based concerns a party's exercise of the right of free speech, right to petition or right of association. If the moving party meets the burden, the burden shifts to the responding party to establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case. If the responding party meets the burden, the court shall deny the motion. . . ." Kan. Stat. Ann. § 60-5320 (d) (2016).

the language in the anti-SLAPP statute that requires the moving party to demonstrate, as part of its initial burden, that the opposing party's claim concerns the moving party's *exercise* of a first amendment right. As the Court of Appeals of Kansas explained, the plaintiff "contends that this language requires [the defendant] to admit to the allegations in question before filing a motion to strike. [The plaintiff] asserts that since [the defendant] denies making the allegedly defamatory statements, she could not have engaged in the exercise of free speech; thus, she should not be afforded the protection of the statute." Id., *5. The Court of Appeals of Kansas disagreed, stating: "[W]e conclude that whether a party may properly bring a motion to strike turns solely on the contents of the plaintiff's claims. [The anti-SLAPP statute] provides that a party may bring a motion to strike if *a claim* is based on a party's exercise of a protected right. Moreover, a party bringing the motion to strike has the initial burden of showing that *the claim* against which the motion is based concerns a party's exercise of a protected right. Put simply, step one of the analysis under [the anti-SLAPP statute] only concerns the content of the claims. As a result, whether [the defendant] later admits or denies the allegations is not relevant regarding step one [of the] analysis because the district court should only consider the contents of the claims in the petition." (Emphasis in original.) Id. For that reason, the court concluded that the trial court "erred by denying the motion to strike based solely on the reason that [the defendant] denied making some of the communications in question. We interpret [the anti-SLAPP statute] to mean that a party bringing a motion to strike has the initial burden of showing that the claims in the plaintiff's petition implicate a protected right under the statute, and it is irrelevant whether the defendant admits or denies making the statements in question." Id., *6.

The Court of Appeals of Kansas further observed that "[t]he fact that [the defendant] denied making some of the statements in question may have a bearing on the second step in the analysis under [the anti-SLAPP statute], but the [trial] court never reached the second step in the case herein." Id. That precept is consistent with California law, which consistently has held that "merits based arguments have no place in [the] threshold analysis of whether plaintiffs' causes of action arise from protected activity" under the first prong of the anti-SLAPP analysis. *Freeman* v. *Schack,* 154 Cal. App. 4th 719, 733, 64 Cal. Rptr. 3d 867 (2007); accord *Navellier* v. *Sletten,* 29 Cal. 4th 82, 94, 52 P.3d 703, 124 Cal. Rptr. 2d 530 (2002) (courts cannot add proof of validity requirement to first prong of anti-SLAPP analysis and any claimed illegitimacy of defendant's acts is only relevant to second prong); *Malin* v. *Singer,* 217 Cal. App. 4th 1283, 1304, 159 Cal. Rptr. 3d 292 (2013) (defendants' denial of plaintiff's allegations irrelevant to first prong and "is more suited to the second step of an anti-SLAPP motion" (internal quotation marks omitted)); *Costa Mesa* v. *D'Alessio Investments, LLC,* 214 Cal. App. 4th 358, 371, 154 Cal. Rptr. 3d 698 (2013) ("[t]he merits of [the plaintiff's] claims should play no part in the first step of the anti-SLAPP analysis"); *Coretronic Corp.* v. *Cozen O'Connor,* 192 Cal. App. 4th 1381, 1388, 121 Cal. Rptr. 3d 254 (2011) ("[a]rguments about the merits of the claims are irrelevant to the first step of the anti-SLAPP analysis"); *Fox Searchlight Pictures, Inc.* v. *Paladino,* 89 Cal. App. 4th 294, 305, 106 Cal. Rptr. 2d 906 (2001) (threshold question of whether anti-SLAPP statute applies is distinct from question of whether plaintiff has established probability of success).

In our view, the foregoing authority is well reasoned and convincing. It also is consonant with the policies and purposes of Connecticut's anti-SLAPP statute, as

articulated in the legislative history before us. Furthermore, our research has not disclosed controlling authority from any jurisdiction that obligates a moving party, under the first prong of an anti-SLAPP analysis, to admit the truth of an opposing party's allegations. To conclude otherwise would deny parties the protections of § 52-196a when a complaint contains false allegations about their conduct. For that reason, we join those jurisdictions that have held that the merits of a complaint—and the moving party's corresponding admission or denial of the allegations therein—have no bearing on the threshold inquiry under § 52-196a (e) (3) as to whether the moving party has made "an initial showing, by a preponderance of the evidence, that the opposing party's complaint, counterclaim or cross claim is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern  . . . ."

## E

Our conclusion today establishes a bright-line rule that provides clarity to both litigants and the judges of this state in applying our anti-SLAPP statute. It bears emphasis that the special motion to dismiss codified in § 52-196a is "a truncated evidentiary procedure enacted by our legislature in order to  . . .  provide for a prompt remedy." *Elder* v. *Kauffman*, supra, 204 Conn. App. 824; see also General Statutes § 52-196a (e) (1) (requiring court to conduct "an expedited hearing" on special motion to dismiss); *Smith* v. *Supple*, supra, 346 Conn. 947 n.16 (§ 52-196a "provides an 'expedited off-ramp' for a party to avoid further litigation); *Priore* v. *Haig*, supra, 344 Conn. 659 (§ 52-196a "provides a moving party with the opportunity to have [a] lawsuit dismissed

early in the proceeding"). In our view, a clear demarcation of the respective burdens of the parties is necessary to effectuate that expeditious intent.

To satisfy its burden under the first prong of § 52-196a (e) (3), a moving party therefore must demonstrate that the allegations of the complaint, counterclaim or cross claim in question are predicated on conduct that implicates its right to free speech, its right to petition the government, or its right of association in connection with a matter of public concern. The focus of that initial inquiry is on the substance of those allegations, as set forth in the pleadings and any supplemental affidavits submitted by the nonmoving party; see General Statutes § 52-196a (e) (2); and *not* on an admission or denial of those allegations by the moving party. Any denial of the pertinent allegations by a moving party or indication that it was not engaged in the exercise of a first amendment right remains relevant to the inquiry under the second prong of § 52-196a (e) (3), which requires a nonmoving party to establish probable cause that it will prevail on the merits of its complaint.[25]

[25] Our courts must be "mindful that anti-SLAPP motions to dismiss are designed to weed out meritless claims at an early stage of litigation . . . and that, with respect to the second prong of § 52-196a (e) (3), they are governed by a minimal legal standard." (Citation omitted.) *Mulvihill* v. *Spinnato*, supra, 228 Conn. App. 801; see also *Elder* v. *Kauffman*, supra, 204 Conn. App. 825 ("[p]roof of probable cause is not as demanding as proof by a preponderance of the evidence"); *People's United Bank* v. *Kudej*, 134 Conn. App. 432, 442, 39 A.3d 1139 (2012) (noting "the very low burden of proof required in a probable cause hearing"); cf. *Mindys Cosmetics, Inc.* v. *Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) ("the second step of the anti-SLAPP inquiry is often called the 'minimal merit' prong"); *Priore* v. *Haig*, supra, 344 Conn. 670 (*D'Auria, J.*, concurring) ("the special motion to dismiss permitted under § 52-196a is easily defeated under a probable cause standard"). Moreover, because the procedural mechanism embodied in that second prong is "similar to a motion for summary judgment"; *Elder* v. *Kauffman*, supra, 824; "when disputed issues of fact arise in the context of a special motion to dismiss, [Connecticut courts must] view the pleadings and affidavits of the parties in the light most favorable to the nonmoving party" in determining whether the nonmoving party has established probable cause under the second prong of § 52-196a (e) (3). *Mulvihill* v. *Spinnato*, supra, 797, 802.

In light of the foregoing, we conclude that the trial court improperly construed the first prong of § 52-196a (e) (3) to require a moving party to admit to engaging in the conduct alleged in the operative complaint. It, therefore, improperly denied the special motions to dismiss filed by the defendants on that basis.

II

Despite that infirmity, the plaintiff contends that the court properly denied the special motions to dismiss under the first prong of § 52-196a (e) (3) because the conduct alleged in his complaint did not involve a matter of public concern. That claim requires little discussion.

As part of its initial burden under § 52-196a (e) (3), a moving party must demonstrate that the allegations of the complaint, counterclaim or cross claim in question are premised on conduct that implicates its first amendment rights "in connection with a matter of public concern . . . ." " 'Matter of public concern' " is defined in § 52-196a (a) (1) as "an issue related to (A) health or safety, (B) environmental, economic or community well-being, (C) the government, zoning and other regulatory matters, (D) a public official or public figure, or (E) an audiovisual work . . . ."[26]

---

[26] The proper scope of matters of public concern, as that terminology is used in § 52-196a, remains an unanswered question, and one that ultimately must be resolved by either the legislature or the courts of this state. Although the statute defines " '[m]atter of public concern' " in part as "an issue related to . . . community well-being"; see General Statutes § 52-196a (a) (1) (B); "community well-being" is not defined in our anti-SLAPP statute. As we recently noted, community well-being "is a nebulous, broadly worded, and potentially far-reaching term. If the defendant here is correct that a real estate agent's conduct is a matter of community concern sufficient to preclude actions regarding defamatory statements, is the same not true for the conduct of other licensed professionals in the community, such as teachers, child care providers, or plumbers? Broadly construed, a matter of 'community well-being' may pertain to the conduct of any business establishment that is open to the public." *Mulvihill* v. *Spinnato*, supra, 228 Conn. App. 789 n.14. In his appellate reply brief, Brignole acknowledges that § 52-196a (a) (1) "provides a sweepingly broad definition of 'matter of public concern' "

In his complaint, the plaintiff alleges that Brignole sent an anonymous letter regarding the plaintiff's June 10, 2018 arrest to "various news outlets and persons" that bore the headline "Attorney Beats Wife In Front of Child" and stated in relevant part that the plaintiff had been arrested and charged with the crimes of "[a]ssault [in the third] [d]egree 'with intent to cause grave physical injury' and [r]isk of [i]njury to a [m]inor, a [c]lass C [f]elony. . . ." See footnote 6 of this opinion. In addition, the anonymous letter specified the "criminal docket" number assigned by the Judicial Branch in connection with those offenses. As our Supreme Court has observed, "[i]t is well established that [t]he commission of crime [and] prosecutions resulting from it . . . are without question events of legitimate concern to the public . . . . Indeed, [p]ublic allegations that someone is involved in crime generally are speech on a matter of public concern." (Citation omitted; internal quotation marks omitted.) *Gleason* v. *Smolinski*, 319 Conn. 394, 415, 125 A.3d 920 (2015); see also *Squeglia* v. *Squeglia*, 234 Conn. 259, 266 n.6, 661 A.2d 1007 (1995) ("the perpetration of a crime by a parent upon a child is a matter of public concern"). Bound by that authority, we conclude that the conduct alleged in the plaintiff's complaint involved a matter of public concern for purposes of § 52-196a (e) (3).[27]

and argues that the defendant's arrest for the crime of assault concerns a matter of community well-being.

[27] The plaintiff also argues that the defendants cannot satisfy their burden under the first prong of § 52-196a (e) (3) to demonstrate that the conduct in question constitutes speech on a matter of public concern, as opposed to a matter of purely private significance, because "the record is absent *any* evidence that [anonymous] letters . . . were sent to or received by" anyone other than the plaintiff. (Emphasis in original.) He is mistaken. As we explained in part I of this opinion, the applicable analysis under the first prong of § 52-196a (e) (3) focuses on the substance of the allegations set forth in the pleadings. Here, the plaintiff specifically alleged in his complaint that Brignole sent the anonymous letters "to various news outlets and persons . . . ." For purposes of satisfying the defendants' initial burden under § 52-196a (e) (3), that allegation suffices.

### III

The plaintiff also claims that the defendants waived their ability to file special motions to dismiss because they "failed to obtain the court's permission to file a late special motion to dismiss," rendering their motions untimely. Our review of the court's memorandum of decision, considered in light of the existing record, convinces us that the court implicitly granted the defendants' motions to extend the time to file their special motions to dismiss.

The plaintiff's claim requires us to construe the judgment rendered by the court in the present case, as articulated in its memorandum of decision. "The construction of a judgment is a question of law with the determinative factor being the intent of the court as gathered from all parts of the judgment. . . . As a general rule, the court should construe [a] judgment as it would construe any document or written contract in evidence before it. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . If [f]aced with . . . an ambiguity, we construe the court's decision to support, rather than to undermine, its judgment. . . . The judgment should admit of a consistent construction as a whole. . . . To determine the meaning of a judgment, we must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances." (Internal quotation marks omitted.) *White* v. *FCW Law Offices*, 228 Conn. App. 1, 8, 323 A.3d 406, cert. granted, 350 Conn. 928, 326 A.3d 250 (2024).

We begin by noting that our anti-SLAPP statute requires a party to file a special motion to dismiss within thirty days of the return date of a complaint. See General Statutes § 52-196a (c). It further provides that "[t]he court, upon a showing of good cause by a party seeking to file a special motion to dismiss, may extend the time

to file a special motion to dismiss." General Statutes § 52-196a (c). Whether to extend that time period, therefore, is a matter entrusted to the discretion of the trial court. See, e.g., *7 Germantown Road, LLC* v. *Danbury*, 351 Conn. 169, 182, 329 A.3d 927 (2025) (statute providing that "[t]he court may extend the [filing] period for good cause" confers discretion on trial court "to extend [the deadline]" (internal quotation marks omitted)); *DeFonce Construction Corp.* v. *Leslie & Elliot Co.*, 21 Conn. App. 545, 548, 574 A.2d 1321 (1990) (use of permissive "may" in rule authorizing court to extend filing period "for good cause shown . . . indicates that the granting or denial of a motion for extension of time within which to file [that motion] is a matter of judicial discretion" (citation omitted; internal quotation marks omitted)).

The following additional facts are relevant to the plaintiff's claim. The return date on the complaint was October 15, 2019, which obligated the defendants to file any special motions to dismiss by November 14, 2019. It is undisputed that they did not do so. At the same time, it also is undisputed that, on November 12, 2019, the law firm filed a motion for an extension of up to thirty days to file a responsive pleading; Brignole filed a similar request seven days later. On November 21, 2019, the plaintiff filed an objection to Brignole's extension request. The next day, Brignole filed a motion for permission to extend the time to file a special motion to dismiss in accordance with § 52-196a (c), which was accompanied by his special motion to dismiss. The plaintiff filed an objection thereto on November 25, 2019.

The law firm filed a separate special motion to dismiss the plaintiff's complaint on November 27, 2019. On December 6, 2019, the plaintiff filed an objection to the law firm's special motion to dismiss, claiming that it was untimely under § 52-196a (c), as it was filed more

than thirty days after the return date of the complaint. Curiously, the plaintiff then stated: "In spite of the foregoing, should the court deem it appropriate, the plaintiff wishes to have [the law firm's] special motion to dismiss decided on the merits, thereby making the court's ruling the law of the case. [The law firm] has waived any claimed first amendment rights to free speech as it relates to this matter [by virtue of the nondisparagement clause of the separation agreement]. . . . [The law firm's] motion should be *denied* on the merits." (Emphasis in original.) The plaintiff thereafter filed an objection to Brignole's special motion to dismiss, in which he similarly claimed that it was untimely and that Brignole had waived any first amendment rights by virtue of the nondisparagement clause. The plaintiff thus argued that Brignole's special motion to dismiss should be denied. On January 10, 2020, the defendants filed separate replies to the plaintiff's objections to their respective motions to dismiss, in which they argued that good cause existed for the court to exercise its discretion to extend the thirty day deadline pursuant to § 52-196a (c).

While those various motions for extension, special motions to dismiss, and objections thereto were pending, the plaintiff filed a request for leave to file an amended complaint on December 19, 2019. The court thereafter deferred consideration of that request, and the plaintiff on appeal concedes that his September pleading constitutes the operative complaint in this case. See footnote 7 of this opinion. On appeal, the defendants nevertheless submit that the plaintiff's filing of that request to amend his complaint further complicated the question of timeliness pursuant to § 52-196a (c) with respect to their special motions to dismiss.[28]

---

[28] The defendants' position, in short, is that the filing of an amended complaint gives rise to a new thirty day response period pursuant to § 52-196a (c).

The court held an expedited hearing on the special motions to dismiss on January 13, 2020, in accordance with § 52-196a (e) (1).[29] At that time, Brignole's counsel engaged in a lengthy discussion of "the issue of timeliness" with the trial court. Noting that Brignole had filed his special motion to dismiss eight days beyond the deadline set forth in § 52-196a (c), the court inquired as to the basis for Brignole's claim of good cause. In response, counsel noted that (1) because service of process was left on a decorative door at Brignole's home that is never used, he did not discover the summons and complaint until October 21, 2019;[30] (2) Brignole, an attorney, was on trial during the time period in question; and (3) because the anti-SLAPP statute was "a relatively new cause of action . . . [Brignole] didn't realize he had these rights because he didn't have enough time to . . . take a good look at the issue."[31] In addition, counsel noted that the plaintiff had recently requested permission to file an amended complaint and argued that Brignole should "be allowed to respond to [that pleading] with a special motion to dismiss as well." See footnote 28 of this opinion. Counsel for the law firm similarly argued with respect to the timeliness issue that "the statute allows the court some discretion" and that there was no prejudice to the plaintiff in extending the time to file special motions to dismiss by approximately one week.

[29] General Statutes § 52-196a (e) (1) provides in relevant part: "The court shall conduct an expedited hearing on a special motion to dismiss. The expedited hearing shall be held not later than sixty days after the date of filing of such special motion to dismiss . . . ."

[30] Brignole's representation that he first discovered service of process on "a decorative door that is never used" on October 21, 2019, was supported by a sworn affidavit that he filed with the court.

[31] Our anti-SLAPP statute became effective on January 1, 2018. The plaintiff commenced the present action on September 29, 2019. The first appellate decision in this state discussing § 52-196a in any manner was decided by our Supreme Court ten months later in July, 2020. See *Lafferty* v. *Jones*, supra, 336 Conn. 332.

When the plaintiff raised the timeliness issue in his argument, the court asked him how he had been prejudiced by the defendants' attempt to file their special motions to dismiss. The plaintiff responded that the statute did not require him to demonstrate prejudice. At the conclusion of the hearing, the court stated: "[A]gain, just so the record is clear, are you claiming that you were prejudiced [by the defendants' tardy filing of their special motions to dismiss]? . . . [I]f you were prejudiced . . . you should tell me now." The plaintiff replied, "No, I'm not arguing prejudice."

At no time thereafter did the court rule on the defendants' motions for extensions of time. In its memorandum of decision, the court likewise did not address the timeliness of the defendants' special motions to dismiss in any manner. Instead, it considered the merits of those special motions and concluded that the defendants had not satisfied their initial burden under the first prong of § 52-196a (e) (3). The court then denied the special motions to dismiss.

On appeal, the plaintiff claims that the defendants waived their ability to file special motions to dismiss because they "failed to obtain the court's permission to file a late special motion to dismiss," rendering their motions untimely. We recognize that the record before us does not contain any explicit ruling on the defendants' motions for extensions of time. As the same time, we are guided by the familiar maxim that the appellate courts of this state "do not presume error [on the part of the trial court]. The burden is on the appellant to prove harmful error." (Internal quotation marks omitted.) *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 132, 74 A.3d 1225 (2013); see also *S. C.* v. *J. C.*, 227 Conn. App. 326, 334, 321 A.3d 427 (2024) ("[t]his court does not presume error on the part of the trial court; error must be demonstrated by an appellant on the basis of

an adequate record" (internal quotation marks omitted)). At no time has the plaintiff sought an articulation from the trial court on whether it determined that good cause existed to extend the filing period of § 52-196a (c) or an explicit ruling on the defendants' extension motions.

Our review of the court's memorandum of decision, considered in light of the existing record, convinces us that the court implicitly granted the defendants' motions to extend the time to file their special motions to dismiss. Although the plaintiff pressed a timeliness objection in his pleadings and at oral argument, the court did not conclude that the special motions to dismiss were untimely filed without good cause. If it had, the court would have dismissed, rather than denied, those motions. Moreover, the transcript of the January 13, 2020 hearing contains ample discussion of the timeliness issue raised by the plaintiff and the defendants' corresponding claims of good cause pursuant to § 52-196a (c) and indicates that the court appreciated the parties' respective arguments thereon. In its memorandum of decision, the court nonetheless proceeded directly to a consideration of the merits of the special motions to dismiss. In light of the admittedly tardy filing of those special motions, the court could not have done so in accordance with § 52-196a (c) unless it had determined that the defendants demonstrated good cause therefor.

In Connecticut, in the absence of a showing to the contrary, "we presume that the trial court, in rendering its judgment . . . undertook the proper analysis of the law and the facts." *S & S Tobacco & Candy Co.* v. *Greater New York Mutual Ins. Co.*, 224 Conn. 313, 322, 617 A.2d 1388 (1992); see also *DiBella* v. *Widlitz*, 207 Conn. 194, 203–204, 541 A.2d 91 (1988) ("we presume that the trial court correctly analyzed the law and the facts in rendering its judgment"). Because this court does not presume error, and mindful that the plaintiff has not sought an articulation from the trial court on this

issue, we presume, consistent with the record before us, that the court implicitly concluded that good cause justified an extension of the filing period of § 52-196a (c).

That presumption is particularly warranted under the specific facts of this case, as the plaintiff expressly invited the court to address the merits of the special motions to dismiss. Significantly, after claiming that the law firm's special motion was untimely under § 52-196a (c), the plaintiff stated: "In spite of the foregoing, should the court deem it appropriate, the plaintiff wishes to have [the law firm's] special motion to dismiss decided on the merits, thereby making the court's ruling the law of the case. [The law firm] has waived any claimed first amendment rights to free speech as it relates to this matter [by virtue of the nondisparagement clause of the separation agreement]. . . . [The law firm's] motion should be *denied* on the merits."[32] (Emphasis in original.) In light of that averment by the plaintiff, it is not surprising that the court reached the merits of the special motions to dismiss. Having invited the court to look past the timeliness issue to address the merits of those special motions, the plaintiff's procedural challenge on appeal rings hollow. For all of these reasons, we reject his claim that the defendants waived their ability to file special motions to dismiss.

In accordance with the remand we are ordering in this case, we direct the trial court to address the additional arguments that the defendants made in support of their special motions to dismiss and the additional grounds raised in opposition by the plaintiff.

The judgments are reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

---

[32] The plaintiff subsequently filed an objection to Brignole's special motion to dismiss, in which he likewise argued that it "should be denied . . . ."